Randall E. SEBOLD, Sr.

v.

Irene H. SEBOLD, Appellant.

No. 23014.

United States Court of Appeals, District of Columbia Circuit.

Argued May 25, 1970.

Decided Feb. 12, 1971.

Mr. Harvey Rosenberg, Silver Spring, Md., for appellant.

Mr. Edgar B. May, Washington, D. C., for appellee.

Before TAMM, LEVENTHAL, and MacKINNON, Circuit Judges.

MacKINNON, Circuit Judge:

The issues here revolve around the effect of a divorce in Maryland upon the title to District of Columbia real estate held by the parties during their marriage as tenants by the entirety. We remand the case for additional hearing and disposition in accordance with the principles hereafter set forth.

I

For a year and one half prior to her marriage, appellant worked as a waitress and turned over her earnings to her husband (appellee) and she continued to do so after their marriage in 1938 until 1943 when she became pregnant with her second child and ceased working. Thereafter, until about 1947, they usually kept a roomer in the house. During the early years of their marriage the couple purchased a residence in the District of Columbia which they sold in 1950 to move to a newly purchased home in Maryland. The purchase price of the Maryland property was partially financed out of the proceeds of the sale of their prior home and the title was placed in the names of the husband and wife as tenants by the entirety. In connection with the sale of the District property the parties took back a second deed of trust and appellant endorsed the note over to appellee, who deposited it in the bank for collection to the credit of his account.

From 1950 through 1960, the parties acquired four other pieces of property in the District of Columbia (the District properties) as follows:

| | |
|---|---|
| May 16, 1950 | 425 New Jersey Avenue, S.E |
| March 23, 1955 | 114–11th Street, S.E. |
| May 13, 1960 | 431–7th Street, S.E. |
| March 6, 1961 | 1208 C Street, N.E. |

The title to each of these District properties was placed in the names of the parties hereto, as tenants by the entirety, and they were used primarily for income-producing purposes. A fifth Dis-

trict property acquired by appellee in 1955 at 910–12th Street, S.E. for $2,150 was placed in his name alone.

In 1964, the parties separated and in 1965 a consent order was entered in the Circuit Court for Montgomery County, Maryland, providing that appellee would pay appellant $300 per month separate maintenance, would make "house payments" (of principal and interest) on the Maryland property as they became due, would pay for the taxes, insurance, heat, gas, water and electricity on that property and would provide certain other benefits for appellant. The District properties were not referred to in the order of the Maryland court.

In 1967 appellee filed a Bill of Complaint in Maryland for an absolute divorce and appellant responded with a Cross Bill. On September 13, 1967 the Maryland court dismissed appellee's complaint and awarded appellant a divorce *a vinculo matrimoni* on her Cross Bill on the grounds of constructive desertion. The decree of divorce incorporated that part of the consent order mentioned above with reference to alimony and other benefits but, again, the District properties were not mentioned.

In March of 1968, appellee commenced the instant action in the United States District Court for the District of Columbia seeking to have title to the four District properties placed in his name. Appellant counterclaimed for an accounting of the monies which appellee had received from the rental of the District properties from and after the date of the entry of the Maryland divorce decree.

The District Court after trial without a jury, awarded appellee title to all of the District properties save the one located at 425 New Jersey Avenue, S.E. In its findings of fact and conclusions of law, which were announced orally in court, it was found that appellant had contributed her earnings to appellee during the early years of their marriage and that, during the period in which they had rented rooms in their initial house, the income so received was placed in a joint fund. The court also found that the appellant made various nonmonetary contributions to the household, chiefly through her efforts in maintaining the home and bringing up the children. Dealing with the case on "the theory that the parties own five properties altogether" (the Maryland house and the four income properties in the District) and holding that the appellant should be entitled to "more than just one of the five pieces of property," the court awarded appellee title in fee simple absolute to all the District properties except that on New Jersey Avenue, title to which it left without any declaration as to its status. On appellant's counterclaim, the court awarded her an accounting of the rents received from the District properties since the date of the entry of the decree of absolute divorce, but allowed appellee an offset for the payments he had made on their Maryland home pursuant to the divorce decree.

From this decision and order appellant appeals and raises nine issues which we consolidate into three principal questions:

(1) Did the District Court have jurisdiction to make the award that it did?

(2) What was the effect of the entry of the decree of divorce in Maryland on the title to the District properties?

(3) Was it proper for the District Court to divide the District properties without first determining the shares to which the parties were entitled or, in any event, to award appellant less than one-half of those properties?

II

Appellant's first contention is that the District Court had no jurisdiction to make the award that it did and that it should have considered the instant action to be one for the partition of real

property between tenants in common or should have dismissed it. For this proposition appellant cites Scholl v. Scholl, 72 F.Supp. 823 (D.D.C.1947).

Although her brief is not entirely clear on this point, appellant must be arguing that the District Court has no "jurisdiction" to provide any remedy other than partition. Appellee entitles his complaint as one for "Declaratory Judgment to Establish Title to Real Property"; alleges that the action is brought under 28 U.S.C. § 2201,[1] D.C. Code § 11–521,[2] and other applicable statutes as well as the general equity powers of the court; and prays the court to declare the District properties to be his "sole property" and to order appellant to convey title to him; and for other relief. We have held that the United States District Court in the District of Columbia has jurisdiction under its general equity powers contained in D.C. Code § 11–521 (1967) "to adjudicate and settle a dispute between the parties concerning their respective rights in

funds and property which had been acquired by them during marriage, or incident thereto." Reilly v. Reilly, 86 U. S.App.D.C. 345, 182 F.2d 108 (1950); see Hardy v. Hardy, 250 F.Supp. 956 (D.D.C.1966). The *Scholl* case is not to the contrary, for there the issue was whether D.C. Code § 16–409 (1940) (now § 16–910)[3] or D.C. Code § 16–1301 (1940) (now § 16–2901)[4] provided the proper remedy. The question of the court's jurisdiction over the subject matter was not discussed, possibly because the Court of Appeals in an earlier proceeding between the same parties had upheld the jurisdiction of the court. *See* Scholl v. Scholl, 80 U.S.App.D.C. 292, 295, 152 F.2d 672, 675 (1945).

In the instant case it does not seem necessary to resolve the question of whether the District Court could have awarded any remedy other than partition. Although appellant does not say so precisely, she seems to feel that the successful maintenance of a suit for partition necessarily results in an equal divi-

1. In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.
28 U.S.C. § 2201 (1964).

2. (a) Except in actions or proceedings over which exclusive jurisdiction is conferred by law upon other courts in the District, the United States District Court for the District of Columbia, in addition to its jurisdiction as a United States district court and to any other jurisdiction conferred by law, has all the jurisdiction possessed and exercised by it on January 1, 1964, and has original jurisdiction of all:

 (1) civil actions between parties, where either or both of them are resident or found within the District; and
 (2) offenses committed within the District.

 (b) Except as otherwise specially provided, an action may not be brought in

the District Court by original process against a person who is not resident or found within the District.
D.C. Code § 11–521 (1967).

3. Upon the entry of a final decree of annulment or absolute divorce, in the absence of a valid antenuptial or postnuptial agreement in relation thereto, all property rights of the parties in joint tenancy or tenancy by the entirety shall stand dissolved and, in the same proceeding in which the decree is entered, the court may award the property to the one lawfully entitled thereto or apportion it in such manner as seems equitable, just, and reasonable.
D.C. Code § 16–910 (1967).

4. The United States District Court for the District of Columbia may decree a partition of lands, tenements or hereditaments on the complaint of a tenant in common, claiming by descent or purchase, or of a joint tenant; or when it appears that the property cannot be divided without loss or injury to the parties interested, the court may decree a sale thereof and a division of the monies arising from the sale among the parties, according to their respective rights.
D.C. Code § 16–2901 (1967).

sion of the properties in issue.[5] As will be discussed, this is not necessarily the case, and the disposition of the property made by the District Court is fully compatible with a disposition which could have been made in a suit for partition. In addition, though appellee did not specifically ask for a partitioning of the property, that relief could nonetheless have been granted. Fed.R.Civ.P. 54(c).[6] The relief requested, essentially an adjudication of his property rights, was a necessary first step in any partition proceedings.

We conclude, therefore, that we are justified in treating this appeal as one from a lower court decree partitioning real property.

Such treatment disposes of any "jurisdictional" question leaving for resolution the issue of the correctness of the lower court's decision.

### III

Appellant next contends that the Full Faith and Credit clause of the Constitution, U.S.Const. art. IV, § 1, was violated by the District Court when that court, in apportioning the District properties, took into account, as a credit in appellee's favor, the amount of alimony awarded to appellant by the divorce decree in the Maryland court. Appellant cites no cases which lend support to this proposition and we have found none.

We first note that it is far from certain that the District Court took the agreed monetary payments, which the Maryland court continued in the divorce decree, into account in making its division of the District properties.[7] But, even if these payments had been taken into account by the District Court, the Full Faith and Credit clause would not be violated under the circumstances of this case. The Maryland decree and the support agreement it incorporated made no mention of the District properties. Only if such silence had the effect of validly binding the parties to some specific disposition of the District properties *inter se* would that clause be violated by a decree in the District Court dividing the property in a different manner. *Compare* Varone v. Varone, 359 F. 2d 769, 771 (7th Cir. 1966). While the Maryland court had jurisdiction over the parties in the divorce action, it had no jurisdiction over the District properties. *See* Durfee v. Duke, 375 U.S. 106, 115, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963); Fall v. Eastin, 215 U.S. 1, 12, 30 S.Ct. 3, 54 L.Ed. 65 (1909). Moreover, the Maryland divorce decree on its face did not purport to order the parties to do anything with respect to the District properties, and the support agreement it in-

---

5. Appellant does not allege that she did not receive a share in the District properties equal to that of appellee. However, the District Court did not say what percentage of the properties it was awarding to whom, and we conclude that appellant is contending she did not get an equal share. *See* Brown v. Alaska Ind. Bd., 224 F.2d 680, 682, 15 Alaska 625 (9th Cir. 1955); Wayne v. New York Life Ins. Co., 132 F.2d 28, 37 (8th Cir. 1943).

6. The Federal Rules provide:

A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment. Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings.

Fed.R.Civ.P. 54(c).

7. In its opinion the District Court stated:

In view of the defendant's [appellant's] contribution [*sic*] some of which were in cash, but more of which were in maintenance of the home and the bring [*sic*] up of the children which is as much the duty of the wife as it is the duty of the husband to earn a living. [*sic*] The wife should be entitled to more than just one of the five pieces of property.

\* \* \* \* \*

The Court is of the opinion that would constitute an equitable division of the property. Three pieces of property will thus go to the [appellee] and title to the home in Maryland and the property on New Jersey Avenue will remain undistrubed. [*sic*]

corporated made no mention of those properties. In view of the fact that a Maryland divorce court has no power to make any disposition of real property unless the parties make an agreement as to its disposition, Md.Code Ann. art. 16, §§ 28, 29 (1966); Smith v. Smith, 227 Md. 355, 362, 176 A.2d 862, 866 (1962); Brucker v. Benson, 209 Md. 247, 250, 121 A.2d 230, 232–233 (1956); Lopez v. Lopez, 206 Md. 509, 514–517, 112 A.2d 466, 469 (1955); see Bailey v. Bailey, 218 Md. 527, 529, 147 A.2d 747, 748 (1959), the absence of any provision in the decree with regard to the District properties simply means that no disposition whatsoever was made of them between the parties. The Maryland decree is therefore limited in force and effect to the matters with which it dealt and it would not violate the Full Faith and Credit clause for the District Court to have taken the provisions of the decree into account in making a disposition of the District properties.

### IV

■ We next come to consider the effect on the title to the District properties of the divorce in Maryland. These properties were held by the parties while married as tenants by the entirety and the entry of the divorce decree could have affected the state of the title to those properties in one of two ways: It could be held that (1) the tenancy by the entirety was simply dissolved and final disposition of title had to await further action by a court, or that (2)

the tenancy by the entirety was dissolved and the parties immediately became tenants in common.[8]

Dissolution of the tenancy by the entirety in either case was accomplished through the operation of D.C. Code § 16–910 (1967).[9] That section, as construed by this court, has two parts, the first of which is the only one of importance in the instant case. In Scholl v. Scholl, 80 U.S.App.D.C. 292, 152 F.2d 672 (1945), we said that the first part of § 16–910, which provides for the dissolution of a tenancy by the entirety upon the entry of a final decree of absolute divorce, was substantive law regarding the effect of a divorce on a tenancy by the entirety. In Heath v. Heath, 89 U.S.App.D.C. 68, 189 F.2d 697 (1951), we held that a property settlement agreement which related to real property in the District of Columbia would be effective under § 16–910 even though it was a foreign decree of divorce that was involved. And logic dictates that the section be held to be triggered by foreign divorces when no settlement agreement is in effect covering property in the District, a situation such as the one at hand.

Although § 16–910, as so construed, dictates that a tenancy by the entirety is dissolved upon entry of a divorce decree, it does not expressly state what happens next. There is some indication in the cases that title is simply dissolved and hangs in limbo until a court decides what shall then happen to it.[10] If possible, such result should be avoided for it

---

8. Counsel for the parties here agree that upon entry of the divorce decree in Maryland, appellant and appellee become enants in common of the District properties. Tr. 18, 179. Since this is a question of law, however, the agreement of counsel is not binding on this court. Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 114, 60 S.Ct. 1, 84 L.Ed. 110 (1939); Gunn v. United States, 283 F.2d 358, 364 (8th Cir. 1960).

9. See note 3, supra.

10. E. g., Heath v. Heath, 89 U.S.App.D.C. 68, 69, 189 F.2d 697, 698 (1951) (emphasis added):

The first part of the statute was found to be substantive; a final divorce terminated the estate by the entireties unless an agreement had been formulated to the contrary. The second provision of [§ 16–910] * * * allows the court when the parties are in that situation to award or apportion the property *left without defined ownership by the first part of the statute.*
In the instant case, such an interpretation would leave unresolved the status of the title of the New Jersey Avenue property since the District Court simply left it "undisturbed." See note 7, supra.

necessarily would have an undesirable effect on the stability and certainty with which title to real property should be clothed.

 There is no hint in the debates which accompanied the passage of § 16–910 that such was the result Congress "intended" but the legislative record is neutral on the point and would not seem to prohibit such result.[11] The better rule, however, would seem to be that upon dissolution of the tenancy by the entirety, the parties became tenants in common. Such a result has been reached by various judges of the District Court, Scholl v. Scholl, 72 F.Supp. 823 (D.D.C.1947); Bowles v. Wray, 72 F.Supp. 822 (D.D.C.1942); see Brown v. Brown, 97 F.Supp. 237, 238 (D.D.C. 1950), and accords with the majority view in other jurisdictions. Lewis v. Romine, 128 Ind.App. 564, 151 N.E.2d 156, 161 (1958); Hillery v. Hillery, 342 Mass. 371, 173 N.E.2d 269, 272 n.4 (1961); Lawrence v. Lawrence, 79 N.J. Super. 25, 190 A.2d 206, 209–210 (App.Div.1963); Sirianni v. Sirianni, 14 A.D.2d 432, 221 N.Y.S.2d 693, 696 (1961); Youree v. Youree, 217 Tenn. 53, 394 S.W.2d 869, 870 (1965); see Glasser v. Glasser, 178 So.2d 749, 750 (Fla.App. 1965); McIntyre v. McIntyre, 377 S.W. 2d 421, 426 (Mo.1964); Perry v. Jolly, 259 N.C. 305, 130 S.E.2d 654, 661 (1963). See generally 4 G. Thompson, Commentaries on the Modern Law of Real Property § 1792, at 107 (Grimes ed. 1961); Keezer on the Law of Marriage and Divorce 582 (3d ed. 1946); Annot., 59 A.L.R. 718 (1929). Thus, we hold that at the commencement of this suit, the parties held the District properties as tenants in common[12] and the

---

11. See 79 Cong.Rec. 11586–96; H.R.Rep. No.1532, 74th Cong., 1st Sess. (1935); S.Rep.No.750, 74th Cong., 1st Sess. (1935). The committee reports indicate that the entire section was considered as working merely a procedural change in existing law. H.R.Rep. No. 1532, supra, at 4.

Section [16–910] is a new section; and confers power and jurisdiction on the court to award property held in joint tenancy or by the entirety to the one lawfully entitled thereto or to apportion the same in an equitable manner. (Under existing law, property rights to be adjudicated as a result of a divorce decree, must be obtained through a separate action in equity).

12. Another possibility, that upon dissolution of the tenancy by the entirety the parties became joint tenants, does not appear to have merit. In the first place, § 16–910 manifests an "intent" that both joint tenancies and tenancies by the entirety be dissolved by divorce. While resolution of a tenancy by the entirety into a joint tenancy would not violate the letter of that section, it would seem to violate its spirit. In the second place, while a tenancy by the entirety resembles a joint tenancy in that both have the unities of time, title, interest and possession, with the unity of person added to the former, a tenancy by the entirety is not simply a joint tenancy with the added unity of person. In a joint tenancy, each person holds "an undivided moiety of the whole." 4 G. Thompson, Commentaries on the Modern Law of Real Property § 1776 (Grimes ed. 1961). The estate can be partitioned. D.C. Code § 16–2901 (1967). In a tenancy by the entirety, there are no moieties. Each party holds the entire estate. 4 G. Thompson, supra, at § 1784; Fairclaw v. Forrest, 76 U.S. App.D.C. 197, 201, 130 F.2d 829, 933 (1942). The estate cannot be partitioned. See D.C. Code § 16–2901 (1967). There is no reason, therefore, why, upon dissolution, a tenancy by the entirety should resolve itself into anything other than what might be called the least common denominator of concurrent ownership. See 4 G. Thompson, supra, § 1793. Finally, as was said in the case of Stelz v. Shreck, 128 N.Y. 263, 28 N.E. 510, 511 (1891):

[O]ur statute provides that every estate granted or devised to two or more persons in their own right shall be a tenancy in common, unless expressly declared to be a joint tenancy. * * * The conveyance did not expressly declare that the tenancy was to be a joint tenancy, and therefore, when the original character of the tenancy by the entirety is changed, it cannot be transformed into that of a joint tenancy without a clear violation of our statute.

The District of Columbia has a statute similar to the one under discussion in Stelz, D.C. Code § 45–816 (1967), and the same reasoning applies.

remedy sought by appellee can be considered as being partition of real property between such tenants.[13]

■■ The fact that the parties were tenants in common, however, does not mean that they each had to receive one-half of the property, for the rule is that, in a suit for partition, the court must first determine the respective shares which the parties hold in the property, before the property can be divided. Gagnon v. Pronovost, 97 N.H. 500, 92 A.2d 904 (1952); Trotta v. Trotta, 103 N.J.Super. 295, 247 A.2d 145 (1968); Jezo v. Jezo, 23 Wis.2d 399, 127 N.W.2d 246, 129 N.W.2d 195 (1964); see Savich v. Savich, 12 Ill.2d 454, 147 N.E.2d 85, 88 (1957); Dollar v. Dollar, 214 Ga. 499, 105 S.E.2d 736 (1958). See generally Annot., 156 A.L.R. 508 (1945). Since the tenancy in common held by the parties to this litigation evolved from a tenancy by the entirety, the normal presumption is that they held equal shares in the tenancy in common. As the Supreme Court of Wisconsin has stated:

> The rule is, therefore, that the interests of joint tenants being equal during their lives, a presumption arises that upon dissolution of the joint tenancy during the lives of the cotenants, each is entitled to an equal share of the proceeds. This presumption is subject to rebuttal, however, and does not prevent proof from being introduced that the respective holdings and interests of the parties are unequal. This presumption may be rebutted by evidence showing the source of the actual cash outlay at the time of acquisition, *the intent of the cotenant creating the joint tenancy to make a gift of the half-interest to the*

*other cotenant*, unequal contribution by way of money or services, unequal expenditures in improving the property or freeing it from encumbrances and clouds, or other evidence raising inferences contrary to the idea of equal interest in the joint estate.

Jezo v. Jezo, 23 Wis.2d 399, 127 N.W.2d 246, 250 (1964) (emphasis added).

■ During the trial, conflicting evidence was introduced concerning the contributions, both monetary and otherwise, made by each of the parties to the District properties. The court found that appellant had made some contributions. But such finding is not controlling here on the disposition of these properties because in the District of Columbia there is another doctrine to the effect that even if real property is purchased entirely by one spouse, and title is taken in the names of both as tenants by the entirety or joint tenants, the consideration to be implied for the share of the non-purchasing spouse is the faithful performance of his or her marriage vows. Moore v. Moore, 51 App.D.C. 304, 278 F. 1017 (1922); Mazique v. Mazique, 123 U.S.App.D.C. 48, 356 F.2d 801 (1966); Oxley v. Oxley, 81 U.S.App.D.C. 346, 159 F.2d 10 (1946); Richardson v. Richardson, 72 App.D.C. 67, 112 F.2d 19 (1940); Osborne v. Osborne, 59 App.D. C. 288, 40 F.2d 800 (1930). Thus even if appellant had not contributed any money to the purchase or upkeep of the District properties, since she held title thereto as a tenant by the entirety, she was entitled to a share of them subject to the condition that she faithfully performed her marriage vows.[14]

■ Because a tenancy by the entirety has all the unities found in a joint

---

13. See 6 J. Moore, Federal Practice ¶ 54.62 (1965).

14. In none of the District of Columbia cases does the court appear to have been concerned with the intention of the parties. The implied "consideration" appears to be implied by law rather than by fact. *See* Richardson v. Richardson, 72 App. D.C. 67, 69, 112 F.2d 19, 21 (1940):

> When property is conveyed to one spouse under the circumstances of this case

> without financial consideration, we have said the consideration or condition underlying the conveyance is the faithful performance of the marriage vows.

Thus, although phrased in contractual terms, the rule is one of quasi-contract and presents no problem for the pre-existing duty rule. *See generally* 1 S. Williston, A Treatise on the Law of Contracts §§ 3A, 32A (Jaeger ed. 1957).

tenancy, plus the unity of marriage, the parties to a tenancy by the entirety must enjoy a unity of interest in the property. *See* Fairclaw v. Forrest, 76 U.S.App.D.C. 197, 200, 130 F.2d 829, 832 (1942). In turn, "[u]nity of interest requires that the shares of the joint tenants, whatever their number, shall be equal." 4 G. Thompson, Commentaries on the Modern Law of Real Property § 1776, at 16 (Grimes ed. 1961). *See also* 2 H. Tiffany, The Law of Real Property § 419, at 198 (Jones ed. 1939). Thus the non-purchasing spouse, in this case the appellant, took an equal share in the property held in the tenancy by the entirety in consideration of faithful performance of her marriage vows.

■■■ The decree of divorce awarded to the wife is conclusive of the fact that she faithfully performed her marriage vows since the husband's suit for divorce was dismissed and Maryland recognizes the doctrine of recrimination. Abare v. Abare, 221 Md. 445, 157 A.2d 427 (1960); Courson v. Courson, 208 Md. 171, 117 A.2d 850 (1955). She therefore fully performed the consideration the law implies for an equal share of the property and she should receive an equal share upon its division.[15]

■■■ In dividing the property equally, we consider it error to take into account that five properties are "involved." By operation of law, the appellant and the appellee are tenants in common with equal shares in the Maryland property. McCally v. McCally, 250 Md. 541, 243 A.2d 538 (1968). They have reached an agreement concerning how that tenancy in common will be shared and the courts of the District of Columbia have no jurisdiction over Maryland property. Had they desired that arrangement to be contingent upon a certain disposition of the District properties they could have so agreed in connection with the divorce. That there was no agreement to do so should simply remove the status of the Maryland property from consideration in the proceeding which is before us, leaving the District properties for distribution as a separate group.

## V

■■■ Finally, we hold that appellant is entitled to an accounting of the rents and profits from the District properties and of any investments made from such income,[16] at least from the date on which the parties became tenants in common, *i. e.*, the date on which the decree of divorce was entered. *See* Schultze v. Schultze, 112 U.S.App.D.C. 162, 164, 300 F.2d 917, 919 (1962); 2 H. Tiffany, The Law of Real Property § 450 (Jones ed. 1939); 4 G. Thompson, Commentaries on the Modern Law of Real Property § 1804 (Grimes ed. 1961). For reasons discussed above, we might

15. We have considered Slaughter v. Slaughter, 83 U.S.App.D.C. 301, 171 F.2d 129 (1948); Hipp v. Hipp, 191 F.Supp. 299 (D.D.C.1960), aff'd 111 U.S.App.D.C. 307, 296 F.2d 429 (1961) and Lundregan v. Lundregan, 176 A.2d 790 (D.C.App. 1962) relied upon by appellee, but find them distinguishable. In *Slaughter*, the husband had supplied all but $100 of the money used to purchase the property and was awarded the divorce on grounds of the wife's desertion. *Lundregan* was a combined divorce and property settlement proceeding in which the parties had made no voluntary agreement concerning the division of any of their property. *Hipp* was, in effect, the same kind of proceeding. In the instant case, we are faced simply with a suit for partition of property owned concurrently by two parties each of whom has given full consideration for an equal share. That equal shares are here required, however, does not mean that they are always required. Special equities may sometimes vary the share to be received by a party when a tenancy in common derived from a tenancy by the entirety is partitioned. *See* Jezo v. Jezo, 23 Wis.2d 399, 127 N.W.2d 246, 250 (1964). *Compare* Kollar v. Kollar, 155 Fla. 705, 21 So.2d 356 (1945); Jones v. Jones, 121 So.2d 811 (Fla.App.1960); Latta v. Latta, 121 So.2d 42 (Fla.App. 1960) *with* Wood v. Wood, 104 So.2d 879 (Fla.App. 1958).

16. It is presumed that the entirety interest follows entirety funds. Ray v. Ray, 336 S.W.2d 731 (Mo.App.1960); Allen v. Kelso, 266 S.W.2d 696, 703 (Mo.1954).

question whether it is proper to give the appellee a credit for the "house payments" he is making pursuant to the agreement incorporated in the Maryland decree, but since neither party is contesting that part of the District Court's order which provided for the accounting, we therefore conclude there is no need for this court to consider the propriety of such credits or whether appellant is entitled to an accounting for any period of time prior to the divorce. *See* Minnesota Mining & Mfg. Co. v. Coe, 73 App. D.C. 146, 148, 118 F.2d 593, 595 (1941).

In light of the foregoing, and particularly the fact that it is impossible from the record here to ascertain the value of the share of the District properties awarded to appellant, we reserve the decision and remand it to the trial court for determination of the value of the District properties and for their division into equal shares.[17]

Reversed and remanded.

---

17. Under D.C. Code § 16-2901, if the property cannot be divided in kind equally, the court may order a sale and division of proceeds. *See* note 4, *supra*.