842 F.2d 483
 127 L.R.R.M. (BNA) 3145, 268 U.S.App.D.C. 487
 NATIONAL LABOR RELATIONS BOARD UNION, LOCAL 6, Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent.
POLICE ASSOCIATION OF the DISTRICT OF COLUMBIA, Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent.
 Nos. 87-1203, 87-1204.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Feb. 8, 1988.
Decided March 25, 1988.
 
 Petition for Review of an Order of the Federal Labor Relations authority.
 Joseph V. Kaplan, with whom Edward H. Passman, Washington, D.C., was on the brief, for petitioners.
 Arthur A. Horowitz, Associate Sol., Federal Labor Relations Authority, with whom Ruth E. Peters, Sol., and William E. Persina, Deputy Sol., Federal Labor Relations Authority, Washington, D.C., were on the brief, for respondent.
 Before WALD, Chief Judge, STARR and SENTELLE, Circuit Judges.
 Opinion for the Court filed by Circuit Judge SENTELLE.
 SENTELLE, Circuit Judge:
 
 
 1
 These cases arise from a Federal Labor Relations Authority (FLRA or the Authority) decision interpreting Secs. 7106 and 7114(b)(4) of the Federal Service Labor-Management Relations Statute (the Act), as amended.[1] In No. 87-1203,[2] the petitioner is the National Labor Relations Board Union, Local 6, and in No. 87-1204,[3] the petitioner is the Police Association of the District of Columbia. Petitioners will hereinafter be referred to collectively as "the Unions."
 
 
 2
 In both cases, the FLRA determined that the employing agencies did not commit unfair labor practices when they denied the Unions' requests per Sec. 7114(b)(4) of the Act for certain documents the Unions claimed were necessary to carry out their representational functions. The documents at issue are internal memoranda of management which contain either recommendations for the disposition of a specific matter, or the reasons for such recommendations.
 
 
 3
 For the reasons outlined below, we vacate the decisions of the FLRA, and remand both cases for further consideration consistent with this opinion.
 
 FACTUAL BACKGROUND
 
 4
 In No. 87-1203, an employee of the National Labor Relations Board's Pittsburgh office, filed a request to work a part-time schedule. Thereafter, the Regional Director prepared a memorandum on the request, and forwarded it to the agency's Assistant General Counsel, who was responsible for acting on such requests.
 
 
 5
 Following review of the employee's request, and the Regional Director's memorandum, which recommended denial, the Assistant General Counsel denied the request. This decision was communicated to both the Regional Director and the employee in a letter dated March 8, 1985.
 
 
 6
 One week later, the Union[4] asked the NLRB to provide data on the workload of the Pittsburgh Regional Office, and a copy of the Regional Director's recommendation. The agency supplied the workload data, but refused to provide a copy of the Regional Director's recommendation. On August 23, 1985, the Union filed an unfair labor practice charge alleging that the agency's refusal to release the memorandum violated Sec. 7116(a)(1), (a)(5), and (a)(8) of the Act.
 
 
 7
 No. 87-1204 involves grievances of four employees of the United States Park Police.[5] Two of the grievances involved the imposition of disciplinary action; the other two involved the denial of requests for administrative leave. In each grievance, the Union filed requests for information. Management supplied all of the requested information except documents, or portions thereof, which contained opinions or recommendations of supervisors or managers. The Union then filed separate unfair labor practice complaints alleging violations of Sec. 7116(a)(1), (a)(5), and (a)(8) of the Act, which the Authority consolidated into one case.
 
 
 8
 The Authority heard each case on stipulated facts and in each instance determined that neither employing agency had committed unfair labor practices. The Unions then petitioned for review pursuant to 5 U.S.C. Sec. 7123(a).
 
 ANALYSIS
 
 9
 In each of these cases, the Unions made their requests under 5 U.S.C. Sec. 7114(b)(4). That section reads in pertinent part:
 
 
 10
 (b) The duty of an agency and an exclusive representative to negotiate in good faith ... shall include the obligation--
 
 
 11
 * * *
 
 
 12
 (4) in the case of an agency, to furnish to the exclusive representative involved, or its authorized representative, upon request and, to the extent not prohibited by law, data--
 
 
 13
 (A) which is normally maintained by the agency in the regular course of business;
 
 
 14
 (B) which is reasonably available and necessary for full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining; and
 
 
 15
 (C) which does not constitute guidance, advice, counsel, or training provided for management officials or supervisors, relating to collective bargaining[.]
 
 
 16
 In each case, the agency stipulated that "the information the respondent failed and refused to furnish is normally maintained by the respondent in the regular course of business and is reasonably available within the meaning of Sec. 7114(b)(4) of the statute."[6] In each case, the respondent agency argued that the information which it refused to furnish was neither necessary nor relevant to subjects within the scope of collective bargaining; but that if it was, it constituted guidance, advice, counsel, or training provided by management officials or supervisors, related to collective bargaining; and, that the release of the data was prohibited by law.[7] In each case, the Authority did not deal with the first two of respondent agencies' objections to disclosure, but decided that the release of the information was "prohibited by law." Since we hold that the Authority erred in this conclusion, it will be necessary to remand these cases to the Authority for consideration of the other two issues.
 
 
 17
 The Authority bases its decisions on Sec. 7106, the "management rights" provision of the Act. 5 U.S.C. Sec. 7106. That section reserves to management officials the authority:
 
 
 18
 * * *
 
 
 19
 (1) to determine the mission, budget, organization, number of employees, and internal security practices of the agency; and
 
 
 20
 (2) in accordance with applicable laws--
 
 
 21
 (A) to hire, assign, direct, layoff, and retain employees in the agency, or to suspend, remove, reduce in grade or pay, or take other disciplinary action against such employees;
 
 
 22
 (B) to assign work, to make determinations with respect to contracting out, and to determine the personnel by which agency operations shall be conducted;
 
 
 23
 (C) with respect to filling positions, to make selections for appointments from--
 
 
 24
 (i) among properly ranked and certified candidates for promotion; or
 
 
 25
 (ii) any other appropriate source; and
 
 
 26
 (D) to take whatever actions may be necessary to carry out the agency mission during emergencies.
 
 
 27
 The Authority reasoned that in its prior applications of Sec. 7106[8] it had held that union bargaining proposals which sought participation in agency decision making procedures were not mandatorily negotiable because of the reservation of rights to management.[9] The Authority then interpreted the "prohibited by law" language of Sec. 7114(b)(4) to mean that all data pertaining to subjects as to which agency management was not required to negotiate pursuant to Sec. 7106 was not disclosable under Sec. 7114.
 
 
 28
 In reviewing the FLRA's interpretation of its own enabling statute, we are mindful that we owe great deference to the expertise of the Authority as it "exercises its 'special function of applying the general provisions of the Act to the complexities' of federal labor relations." Bureau of Alcohol, Tobacco and Firearms v. FLRA, 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983) (citations omitted). This deference compels reviewing courts to "uphold reasonable and defensible constructions of an agency's enabling act." Id. (citations omitted). However, as the BATF v. FLRA decision admonishes us, this "deference owed to an expert tribunal cannot be allowed to slip into judicial inertia" nor should this deference be permitted to turn reviewing courts into mere "rubber stamps" for unbridled exercise of agency license. Id.; see also American Shipbuilding Co. v. NLRB, 380 U.S. 300, 85 S.Ct. 955, 13 L.Ed.2d 855 (1965); and Chemical and Alkali Workers v. Pittsburgh Plate Glass Co., 404 U.S. 157, 92 S.Ct. 383, 30 L.Ed.2d 341 (1971). Unfortunately in this case, the Authority's interpretation of its enabling act simply is not reasonable; and we cannot rubber stamp it.
 
 
 29
 The portion of Sec. 7114(b)(4) relied upon by the Authority makes it inapplicable to data the disclosure of which is "prohibited by law." For it to be inapplicable under that reasoning and for the refusal to make disclosure to be proper by that reasoning, there must be something somewhere in the law that forbids that data's disclosure. Section 7106 does not contain that "something" and, therefore, cannot support the authority's decision. Section 7106 by any reading does not prohibit the disclosure of anything. All it does is reserve to management the authority to act in certain areas. Nothing in Sec. 7106 prohibits management from disclosing any or all of the data relied upon or accumulated by it in acting within those areas. Indeed, Sec. 7106(b) makes it plain that "[n]othing in this section shall preclude any agency and any labor organization from negotiating--(1) at the election of the agency ..." on many of the matters contained within the reservation. Nothing in Sec. 7106 contains any language concerning the disclosure or prohibition of disclosure of anything. The interpretation the Authority gives to this section is simply not a reasonable one and, indeed, is not an interpretation at all, but rather is a rewriting of the section. The power to write statutes and to determine the policies underlying them lies neither with the Authority nor the courts, but rather is reserved to Congress; and the Authority, like this Court, must recognize that reservation. See authorities collected in BATF v. FLRA, supra, 464 U.S. at 97, 104 S.Ct. at 444.
 
 
 30
 Past decisions applying the "prohibited by law" exemption to the disclosure requirement have dealt with its interpretation in light of other sources of law, in fact, rendering the disclosure of certain information unlawful. Typically, this is focused on the provisions of the Freedom of Information Act, 5 U.S.C. Sec. 552, and the Privacy Act, 5 U.S.C. Sec. 552a. See e.g., AFGE, Local 1760 v. FLRA, 786 F.2d 554 (2nd Cir.1986). This would appear from the plain language of the involved statutes to be what Congress intended. Nothing in Sec. 7114, Sec. 7106 or in the legislative history of either suggest that disclosure of any of the data sought here is "prohibited by law."
 
 
 31
 It may well be that the management rights section relied on by the Authority does render the documents sought nondisclosable under Sec. 7114(b)(4)(C) as the agencies argued at the administrative level. It may be that the documents are not disclosable under Sec. 7114(b)(4)(B) as the agencies also argued. However, as to these subjects, we express no opinion. The FLRA did not base its decision on those arguments, and we cannot affirm an agency on a basis which the agency did not consider. American Public Transit Assoc. v. Lewis, 655 F.2d 1272 (D.C.Cir.1981). We, therefore, remand for the Authority to reconsider its decisions consistently with this opinion.
 
 
 32
 Vacated and remanded.
 
 
 
 [1]
 5 U.S.C. Secs. 7101-7135 (1982 & Supp. III 1985)
 
 
 [2]
 Agency decision reported as National Labor Relations Board and National Labor Relations Board Union, Local 6, 26 FLRA 108 (1987)
 
 
 [3]
 Reported as National Park Service, National Capital Region, U.S. Park Police and Police Association of the District of Columbia, 26 FLRA 441 (1987)
 
 
 [4]
 At all times relevant to this case, the employee was a member of the NLRB Union, Local 6, and the Union was the exclusive representative of NLRB employees
 
 
 [5]
 At all times relevant to this case, the Police Association of the District of Columbia was the exclusive representative of a unit of employees within the United States Park Police
 
 
 [6]
 This language is drawn from National Park Service, National Capital Region, U.S. Park Police and Police Association of the District of Columbia, 26 FLRA at 442. The stipulation in National Labor Relations Board and National Labor Relations Board Union, Local 6, supra, is substantially identical, but adds the additional stipulation that "disclosure of the memorandum is not prohibited by law." 26 FLRA at 110. Since this additional stipulation obviously relates to a matter of law and not fact, the Authority was free to ignore it, which it did, as will be shown. Cf. Sebold v. Sebold, 444 F.2d 864 (D.C.Cir.1971)
 
 
 [7]
 While this argument would seem in the case of NLRB to be inconsistent with the stipulation, since the stipulation is not binding on the Authority in any event, that inconsistency is without effect to the decision of either the Authority or this Court. See n. 6, supra
 
 
 [8]
 See e.g., AFGE, Local 3804 and FDIC, Madison Region, 21 FLRA 870 (1986) (Proposal 3); and AFGE, Local 2302 and U.S. Army Armor Center, Ft. Knox, Ky., 15 FLRA 17 (1984) (Proposal 2)
 
 
 [9]
 The FLRA's general interpretation is supported by the courts, see e.g. NFFE, Local 1167 v. FLRA, 681 F.2d 886 (D.C.Cir.1982)