**Glenn BALLARD, Appellant,**

v.

**Matthew DORNIC, Appellee.**

**No. 15–CV–895.**

District of Columbia Court of Appeals.

Submitted April 22, 2016.
Decided June 28, 2016.*

* The decision in this case was originally issued as an unpublished Memorandum Opinion and

Judgment.

Ryan S. Spiegel, Washington, DC, for appellant.

James N. Markels, Washington, DC, for appellee.

Before THOMPSON and EASTERLY, Associate Judges, and REID, Senior Judge.

THOMPSON, Associate Judge:

This litigation commenced when appellee Matthew Dornic filed a complaint for partition-by-sale of two properties that are

owned by Mr. Dornic and appellant Glenn Ballard as joint tenants: a single family home located at 3134 Dumbarton Street, N.W. ("the Dumbarton Property"), where Mr. Ballard resides, and a condominium unit located at 1767 U Street N.W., Unit 1 ("the U Street Property"). Mr. Ballard seeks review of the trial court's ruling granting Mr. Dornic's motion for partial summary judgment on his claim for partition-by-sale and ordering the parties to confer about who might be appointed as trustee to sell the properties.[1] We affirm.

## I.

In granting Mr. Dornic's prayer for partition-by-sale, Superior Court Judge John Campbell relied on the well-established, general rule that "[a] cotenant enjoys a unilateral right of partition."[2] Rejecting Mr. Ballard's argument that Mr. Dornic had voluntarily limited his right to partition, Judge Campbell concluded that the only question before the court was whether the partition would be in kind or by sale.

In his first argument on appeal, Mr. Ballard asserts that Judge Campbell erred (1) in assuming that an individual owning property as a cotenant will lack the right to demand partition only if the cotenants hold the property as tenants by the entireties and (2) in rejecting Mr. Ballard's claim that Mr. Dornic limited his right to partition by failing to pay his fair share of the mortgages and other expenses associated with each of the properties. Our

review of the trial court's legal conclusions is *de novo*, and we review factual findings under a clearly erroneous standard. *See Arthur*, 857 A.2d at 490.

Our case law recognizes that a cotenant's unilateral "right to partition, while normally an integral part of the cotenancy form of ownership, is like most property rights subject to possible limitation by voluntary act of the parties[,]" *Carter*, 516 A.2d at 921, such as through the cotenants' agreement that one of the cotenants is to have exclusive use and possession of the property for some limited time period. *Id.* at 921 n. 10; *see also Robinson v. Evans*, 554 A.2d 332, 338 (D.C.1989) ("*Carter* establishes that the parties had the power to restrict their own right to seek partition[.]"). We therefore agree with Mr. Ballard that the fact that an estate is not a tenancy by the entireties does not negate the possibility that one of the cotenants has, by a voluntarily act, restricted his right to seek partition. But our agreement on this point does not help Mr. Ballard's cause, because he cites no authority, and we know of none, for his novel argument that a joint tenant voluntarily restricts his right to partition by virtue of the fact—as Mr. Ballard avers is the case with Mr. Dornic—that he has paid a less-than-equal or relatively small share of the expenses related to the property. Nor does the summary judgment record reveal any evidence that either of the parties "expressed their intent *not* to partition." *Id.* (emphasis in original). We

---

1. Sale of the properties has been stayed pending the outcome of this appeal.

2. *Ford v. Ford*, 98 A.3d 1008, 1009 (D.C.2014) (quoting *Arthur v. District of Columbia*, 857 A.2d 473, 487 (D.C.2004)); *see also Carter v. Carter*, 516 A.2d 917, 920 (D.C.1986) (a cotenant "is entitled to partition, as a matter of right" (quoting *Willard v. Willard*, 145 U.S. 116, 120, 12 S.Ct. 818, 36 L.Ed. 644 (1892))); *Willard*, 145 U.S. at 121, 12 S.Ct. 818 (a

cotenant's right to partition cannot "be defeated by the mere unwillingness of one party to have each enjoy his own [share] in severalty"); 68 C.J.S. *Partition* § 30 (2016) ("A partition can be demanded at any time, regardless of conditions, and, when properly demanded, the only function of the court is to determine the method of making it."); 59A Am. Jur. 2d *Partition* § 5 (2016) (explaining that the right to partition "does not yield to considerations of hardship, inconvenience, or difficulty").

therefore conclude that Judge Campbell did not err in rejecting Mr. Ballard's theory that Mr. Dornic limited his right to partition by a voluntary act.

## II.

As his basis for granting partial summary judgment to Mr. Dornic, Judge Campbell determined that a partition-by-sale is appropriate because it "appears that the propert[ies] can not [sic] be divided without loss or injury to the parties interested[.]" D.C.Code § 16–2901(a) (2012 Repl.). Mr. Ballard argues that Judge Campbell erred in finding, on disputed facts and on an incomplete factual record, that the property cannot be divided without loss or injury to the parties, and by concluding without analysis that a partition-by-sale is necessary. We review the grant of partial summary judgment by applying the same standard Judge Campbell was required to apply: "If, viewing the record in the light most favorable to the non-moving party, we conclude that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law, the judgment of the trial court will be affirmed." *Hospitality Temps Corp. v. District of Columbia*, 926 A.2d 131, 134 (D.C.2007).

Actions for partition are governed by D.C.Code § 16–2901(a), which provides that "when it appears that the property can not [sic] be divided without loss or injury to the parties interested, the court may decree a sale thereof and a division of the money arising from the sale among the parties, according to their respective rights." The general test of whether a partition-in-kind—a physical division of the property according to the cotenants' shares—would result in loss or injury to the owners is whether the property can be divided "without materially impairing its value or the value of an owner's interest in it." 59A Am. Jur. 2d *Partition* § 121 (2016).

In this case, no one contests that the properties in question—a single family home and condominium—cannot be physically divided without diminishing their value. Mr. Ballard contends, however, that a partition-in-kind does not necessarily require that a property be physically severed into separate parts. He argues that each of the properties can and should be partitioned in kind by awarding each in its totality to him. Mr. Ballard appears to be correct that if a property is subject to partition, "*a fortiorari* it can be awarded in part, or in its totality, to one tenant depending upon the facts, evidence, etc., in the case." *Hipp v. Hipp*, 191 F.Supp. 299, 301 (D.D.C.1960) (citing *Hogan v. Hogan*, 250 F.2d 412 (D.C.Cir.1957)).[3] But again, the principle on which Mr. Ballard relies does not help him, because the summary judgment record does not support an award of the properties to Mr. Ballard alone. That is so even if we take as true the factual allegations to which Mr. Ballard swore in his "Verified First Amended Answer and Counterclaims" and on which he relies in his briefs on appeal.

"[I]n a suit for partition, the court must first determine the respective shares which the parties hold in the property, before the property can be divided."

See also *Carter*, 516 A.2d at 921 (holding open the possibility that the partition statute "might lend itself to flexibility" to take into account "the financial and other circumstances of the cotenants").

---

**3.** At the time it decided *Hipp* (several years prior to the effective date of the District of Columbia Court Reorganization Act of 1970), the United States District Court for the District of Columbia was the trial court of general jurisdiction in cases arising under District of Columbia law). See *Newman v. Coakley*, 285 A.2d 690, 692 (D.C.1972).

*Sebold v. Sebold,* 444 F.2d 864, 872 (D.C.Cir.1971).[4] "[A] presumption arises that upon dissolution of [a] joint tenancy during the lives of the cotenants, each is entitled to an equal share of the proceeds." *Id.; see also* 20 Am. Jur. 2d *Cotenancy and Joint Ownership* § 116 ("A rebuttable presumption of equal shares applies as well to property held in joint tenancy[.]"). However, that presumption "is subject to rebuttal ... and does not prevent proof from being introduced that the respective holdings and interests of the parties are unequal." *Sebold,* 444 F.2d at 872. The presumption that joint tenants own an equal share of a property can be rebutted by "evidence showing the source of the actual cash outlay at the time of acquisition, the intent of the cotenant creating the joint tenancy to make a gift of the half-interest to the other cotenant, unequal contribution by way of money or services, unequal expenditures in improving the property or freeing it from encumbrances and clouds, or other evidence raising inferences contrary to the idea of equal interest in the joint estate." *Id.*[5]

The foregoing case law addresses the effect the trial court may give to cotenants' unequal contributions when determining their respective shares in a property upon partition. In addition, the partition stat-ute prescribes the effect that may be given to cotenants' unequal receipt of rents from a jointly owned property. Specifically, D.C.Code § 16–2901(c) addresses the situation "[i]n a case of partition, when a tenant in common has received the rents and profits of the property to his own use[.]" It provides that such a cotenant "may be required to account to his cotenants for their respective shares of the rents and profits" and that "[a]mounts found to be due on the accounting may be charged against the share of the party owing them in the property, or its proceeds in case of sale."

Mr. Ballard's opposition to Mr. Dornic's motion for partial summary judgment incorporated by reference the averments in Mr. Ballard's "Verified First Amended Answer and Counterclaims," including Mr. Ballard's allegation that Mr. Dornic paid a total of only $17,225.53 toward the purchase price and mortgage service for first and second mortgages on the Dumbarton property, while Mr. Ballard paid a total of over $586,662. Regarding the U Street property, Mr. Ballard averred in his counterclaims that he has made mortgage payments totaling about $147,000, while Mr. Dornic has made payments totaling about $177,000. He also averred that Mr. Dornic

---

4. *Sebold,* decided on February 12, 1971, is not binding on this court, *see M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971) (explaining that this court is "not bound by the decisions of the United States Court of Appeals rendered after [February 1, 1971]"), and in some respects has been superseded by the District of Columbia Marriage and Divorce Act, *see Hairston v. Hairston,* 454 A.2d 1369, 1371 (D.C.1983), but, in numerous opinions, we have cited with approval the principles it articulates. *See, e.g., Benvenuto v. Benvenuto,* 389 A.2d 795, 797 n. 2 (D.C.1978); *Campbell v. Campbell,* 353 A.2d 276, 279 (D.C.1976); *King v. King,* 286 A.2d 234, 237 (D.C.1972).

5. *Cf., e.g., Melnick v. Press,* 809 F.Supp.2d 43, 58 (E.D.N.Y.2011) ("As a general matter, ex-penditures made by a tenant in excess of his obligations may be a charge against the interest of a cotenant.") (internal quotation marks omitted); *Laney v. Siewert,* 26 A.D.3d 194, 810 N.Y.S.2d 436, 437 (2006) (evidence that defendant paid "virtually all of the apartment's purchase price and carrying costs is sufficient to rebut the presumption that the parties are entitled to an equal number of shares on partition"). "The determination as to whether the presumption [that joint tenants own equal shares] was overcome by the evidence is a question of fact for the trial court." *Gallimore v. Washington,* 666 A.2d 1200, 1216 (D.C.1995) (Schwelb, J., dissenting (quoting *Duston v. Duston,* 31 Colo.App. 147, 498 P.2d 1174, 1175 (1972))).

has collected rents of $210,000 from the U Street property and not shared them with Mr. Ballard. As to each of the properties, Mr. Ballard contends that the amount Mr. Dornic owes him in order to equalize mortgage-payment contributions and/or to pay him his share of the rents collected is more than Mr. Dornic would realize from his half of the proceeds of a sale of the property. For that reason, Mr. Ballard contends, a sale of the property would leave Mr. Dornic with accrued liabilities to Mr. Ballard still hanging over his head, while a partition-in-kind, awarding 100% of the property to Mr. Ballard (upon Mr. Ballard's agreement to refinance the existing mortgages so that they are solely his responsibility) would at least arguably leave Mr. Dornic *better off* than he is now (meaning, Mr. Ballard implies, that it is a partition-by-sale, not a partition-in-kind, that would cause "loss or injury to the parties interested[.]" D.C.Code § 16–2901(a)).

Mr. Ballard asserts that Judge Campbell failed to conduct a full accounting, to resolve the parties' factual disputes about their relative financial contributions,[6] and to consider the foregoing alleged circumstances before determining whether a partition-by-sale is appropriate. He asserts that Judge Campbell erred in summarily concluding that the properties cannot be partitioned in kind without loss or injury to the parties.

There are, to be sure, issues of fact regarding the parties' relative financial contributions; Mr. Dornic's answer to Mr. Ballard's counterclaims denies most of the relevant allegations about uneven contributions. We nonetheless are satisfied that Judge Campbell was presented with no issues of *material* fact that precluded partial summary judgment. Even if Mr. Ballard's averments are taken as true, and it also is assumed that Mr. Dornic made no non-monetary contributions and received no gifts from Mr. Ballard that entitle him to a larger share of the property, *see Sebold,* 444 F.2d at 872, it seems clear that Mr. Dornic holds whatever ownership share in the Dumbarton property his $17,000 investment in the property represents and whatever ownership share in the U Street property his $177,000 investment represents.[7] If the parties' relative contributions are as Mr. Ballard avers, Mr. Ballard's proportionately larger contributions and Mr. Dornic's accrued liability to Mr. Ballard for U Street rents collected may warrant adjustments to the parties' otherwise presumed equal shares in the properties, and may mean that Mr. Ballard has a greater–than–50% share in each property. That is because, per the case law and the partition statute discussed above, the parties' disproportionate contributions and accrued liabilities are to be considered in determining "the respective holdings and interests of the parties," *Sebold,* 444 F.2d at 872, and, for purposes of a partition-in-kind, are to be "charged against the share of the party owing them[.]" D.C.Code § 16–2901(c). But the summary judgment record provided no basis for Judge Campbell to conclude that Mr. Dornic owns *no* share or interest in the properties such that Mr. Ballard is entitled to sole owner-

---

6. In his Answer to Counterclaims, Mr. Dornic denied Mr. Ballard's allegations about the parties' uneven financial contributions.

7. Thus, this is not, for example, a case in which the record shows that although the properties are titled in both parties' names, that was done as an estate-planning or similar arrangement, without any supporting consid-

eration by Mr. Dornic. *Cf. Brousseau v. Brousseau,* 182 Vt. 533, 927 A.2d 773, 776 (2007) (rejecting the daughter's claim to one-half of the proceeds from the sale of mother's property where the daughter was aware that the property was titled to her as joint tenant only in an effort to avoid probate if the mother still owned the house at the time of her death).

ship of one or both properties as the result of a partition-in-kind.

## III.

 Appellant's remaining argument for why the trial court should have granted a partition-in-kind is that a partition-by-sale in this case "is in stark contrast with principles of equity." Because the trial court has "discretion . . . in choosing between a partition in kind or by sale," *Carter*, 516 A.2d at 920, we review this claim for abuse of discretion. We find none.

 It is true that equitable considerations may be relevant in "determining whether partition will be in kind or by sale[.]" *Carter*, 516 A.2d at 921.[8] However, the mere "invocation of the mantra of equitable considerations bestows no license upon a trial court to grant or deny partition according to its views of the respective situations of the cotenants." *Id.* at 920.

Even if Mr. Ballard is correct that a partition-in-kind would be "more efficient and cost-effective" than a partition-by-sale, we cannot say that Judge Campbell abused his discretion in concluding that the partition should be by sale rather than in kind. This is particularly so given that, in opposing partial summary judgment, Mr. Ballard did not come forward with an appraisal of the market value of the properties that might have enabled the court to assess his claim that the expected amount of proceeds from a sale would make it unreasonable for the parties to incur the expenses of a trustee and a real estate agent, or would make Mr. Dornic's net proceeds from a sale not worth pursuing. Nor does the fact that Mr. Ballard lives in the Dumbarton property make a partition-by-sale inequitable, especially given that Mr. Ballard (who expresses confidence that he would be able to arrange refinancing on solely his own credit) presumably will be able to bid on the Dumbarton property at a public sale.

 Mr. Ballard argues that "the best equitable resolution is to simply convey Mr. Dornic's interest in the properties to Mr. Ballard as credit toward Mr. Dornic's debts and liabilities[.]" That, however, would effectively be to require Mr. Dornic to sell his shares in the properties to Mr. Ballard. As Judge Campbell correctly recognized, in this jurisdiction, "a court may not force one cotenant to sell his or her interest to the other cotenant[.]" *Carter*, 516 A.2d at 920 n. 4; *see also Hairston*, 454 A.2d at 1373 ("Nothing in the language of [D.C.Code § 16–2901] authorizes the court to order the sale of the interest of one tenant in common to the other.").[9] However small Mr. Dornic's percentage share of any sales proceeds might be, he is "entitled to the competitive

---

8. Thus, for example, if a division of land along natural lines cannot be made while allotting the parties sections of equal area or value, the court may give one party an allotment in excess of his share, while requiring him to pay the value of such excess (so-called "owelty") to his cotenant, because "[i]t would seem more equitable, in a proper case, to require the payment or receipt of a reasonable sum of money than to require lands to be sold as a whole, where a proportionately small sum is required to equalize the shares." *Chesmore v. Chesmore*, 484 P.2d 516, 518–19 (Okla.1971).

9. The cases stating a contrary rule on which Mr. Ballard relies, *Ackerman v. Hojnowski*, 804 A.2d 412 (Me.2002), and *Libby v. Lorrain*, 430 A.2d 37 (Me.1981), involved application of a Maine statute, 14 M.R.S.A. § 6515 (1980), that explicitly authorizes a court to "assign the property to be partitioned to one party and require that party to pay a sum of money to compensate another party for his or her share in the property." *Ackerman*, 804 A.2d at 417; *see also Libby*, 430 A.2d at 39–40.

benefits of a public sale." *Carter*, 516 A.2d at 920 n. 4.

Nor does the record provide any reason to think that Mr. Dornic would be unjustly enriched through a partition-by-sale. *Cf. Robinson*, 554 A.2d at 338 ("Mr. Evans contributed some of his own resources to the purchase of the Buchanan Street house. Although the value of his contributions may be in dispute, he will not be unjustly enriched ... by the sale of the property[.]").[10]

\*　　\*　　\*

Because the record does not support a finding that Mr. Dornic voluntarily limited his right to partition; because there is no dispute that the properties cannot be physically divided without injury or loss; and because, even according to Mr. Ballard's calculations, Mr. Dornic owns a more-than-nominal share of each of the properties, which the court may not require him to sell to Mr. Ballard, Judge Campbell did not err in granting partial summary judgment to Mr. Dornic on his claim for partition-by-sale. Further, we discern no basis for concluding that a partition-by-sale would be inequitable under the circumstances. Accordingly, the judgment of the Superior Court is

*Affirmed.*

---

**10.** That said, we echo the words of the *Robinson* court: "If ever a case cried out for settlement, this is such a case; we are at a loss to understand why it was not settled long ago." 554 A.2d at 339 n. 19.