Edith NEWMAN, Appellant,

v.

Charles COAKLEY, Appellee.

No. 6051.

District of Columbia Court of Appeals.

Argued Dec. 7, 1971.

Decided Jan. 11, 1972.

---

2. Appellee had adopted appellant's child by a former marriage.

Jacob A. Stein, Washington, D. C., for appellant. Glenn A. Mitchell, Washington, D. C., also entered an appearance for appellant.

William R. Scanlin, Bethesda, Md., for appellee.

Before FICKLING, GALLAGHER, and REILLY, Associate Judges.

REILLY, Associate Judge:

This appeal challenges an order reducing a jury verdict of $14,000 to $10,000 on the ground that the amount of damages awarded by the jury exceeded the statutory limit of $10,000 applicable to actions begun in the Court of General Sessions, where appellant on May 14, 1967 had filed a negligence suit to recover damages for personal injuries incurred in an automobile accident.

The case did not come to trial until March 10, 1971. At this time the matter was heard in the Superior Court—the statutory successor to the Court of General Sessions. On the eve of trial, appellant, mindful of the fact that the new court had jurisdiction over civil actions filed there if the amount in controversy did not exceed $50,000, moved to amend the ad damnum clause in her complaint to specify a demand of $30,000. That motion was denied without prejudice to its resubmission in the event of a verdict in excess of $10,000.

Ultimately the jury, after adjudging defendant negligent, returned a verdict of $14,000 in favor of appellant, who thereupon moved to amend her complaint to conform to the proof (*i. e.*, to support a judgment reflecting the jury verdict). The trial court denied the motion and in an order—in the nature of *remittitur*—entered judgment for appellant in the amount of $10,000.

In a written opinion, the trial court observed that in the absence of any legislative history or appellate decision bearing on the problem, its judgment was based entirely on the text of the statute establishing the Superior Court. The opinion went on to state:

. . . The Court of General Sessions was a statutory court of limited jurisdiction. It was superseded by the Superior Court on February 1, 1971. Clearly, a verdict in excess of $10,000 prior to February 1 would have required reduction to the jurisdictional limit. Beginning February 1, two relevant factors became effective. First, all of the cases which had been filed in the Court of General Sessions thenceforth were to come within the jurisdiction of the new Superior Court. D.C.Code § 11–921(a)(1) (Supp.IV, 1971). Second, the jurisdictional limit in civil cases filed after Superior Court came into existence was raised to $50,000. D.C.Code § 11–921(a)(2) (Supp. IV, 1971).

The two provisions are separate and exclusive. In creating a new court which ultimately would have unlimited local jurisdiction, Congress unquestionably contemplated a phased period of expanding jurisdiction. It is concluded that the jurisdictional limit of cases which had been filed in the Court of General Sessions was unaffected by court reorganization, and that a Superior Court jury verdict in excess of $10,000 cannot stand in civil cases filed prior to February 1, 1971.

This is the first time we have been squarely confronted with the task of construing the statute governing the juris-

diction of the new Superior Court with respect to civil actions still pending in the *Court of General Sessions on February 1, 1971,* the effective date of the District of Columbia Court Reorganization Act of 1970.[1] Prior to that date, there were three trial courts of limited jurisdiction in the District, *viz.,* General Sessions, the Juvenile Court, and the Tax Court. The Reorganization Act abolished these courts, vesting jurisdiction over matters pending in those tribunals in the Superior Court which, in turn, was established as the trial court of general jurisdiction in cases arising under District of Columbia law—the Act transferring to the Superior Court from the United States District Court in a three-stage process, jurisdiction over all non-Federal cases.

The provisions of the Act which bear directly upon the question before us are concerned with the first stage of expanding civil jurisdiction of the Superior Court and are found in § 11–921 of D.C.Code 1967 (Supp.IV, 1971). Insofar as relevant, this section provides:

(a) Except as provided in subsection (b), the Superior Court has jurisdiction of any civil action or other matter (at law or in equity) brought in the District of Columbia. Such jurisdiction shall vest in the court as follows:

(1) Beginning on the effective date of the District of Columbia Court Reorganization Act of 1970, the court has jurisdiction of any civil action or other matter begun before such effective date in *the District of Columbia Court of General Sessions, the Juvenile Court of the District of Columbia, or the District of Columbia Tax Court.*

(2) Beginning on such effective date, the court has jurisdiction of any civil action or other matter, at law or in equity, which is begun in the Superior Court on or after such effective date and in which

the amount in controversy does not exceed $50,000.

The key word in both the numbered paragraphs quoted from this subsection is "begun". Apparently the trial court relied upon the repetition of this word in § 11–921(a) (1) and (a) (2) in concluding that the Superior Court's jurisdiction over pending cases described in paragraph (1), *supra,* was not changed or enlarged by paragraph (2), *supra,* which on its face seems to apply only to actions *begun* after the effective date of the statute.

With respect to actions begun in the Juvenile Court prior thereto, this court recently came to a similar conclusion in what might be regarded as the converse of the situation, Cupo v. District of Columbia, D. C.App., 285 A.2d 696 (decided January 6, 1972). This was a bastardy proceeding filed by the corporation counsel in behalf of a nonresident mother in the Juvenile Court, and subsequently tried in the Superior Court. Under another provision of the Act, § 16–2341, D.C.Code 1967 (Supp. IV, 1971), such official may not prosecute unless complainant is likely to become a public charge here. We rejected an argument by the putative father challenging the authority of the corporation counsel to maintain the suit after the effective date of the Act, on the ground that the rights of parties, in actions already pending on such date, were preserved after the transfer of jurisdiction of such matters to the Superior Court by reason of the language of § 11–921(a) (1), *supra.*

Appellant's counsel contends, however, that considerations of expeditious judicial administration militate against so literal a construction of the statute. He argues that the judgment of the court below, if permitted to stand, would cause unnecessary circuity of action. He points out that plaintiffs who had filed suit in General Sessions and have subsequently concluded that they are entitled to more damages

---

1. Title I, District of Columbia Court Reform and Criminal Procedure Act of 1970,

Pub.L.No.91–358, approved July 29, 1970, 84 Stat. 484, 485.

than the old jurisdictional limits of that court envisaged, could move for a voluntary nonsuit under Rule 46 of the civil rules of the Superior Court and start a new action in the United States District Court where there is currently no jurisdictional ceiling on damage actions. In such event, the judges of that court, if they continue current practice, would certify the case to the Superior Court, where judge or jury would be free to award damages exceeding $10,000. Should a plaintiff adopt this roundabout course of action,[2] he could achieve the same result in the Superior Court which appellant in this case sought to accomplish when she invoked the policy of allowing liberal amendments to the pleadings.

In short appellant urges that in the interest of avoiding additional filing fees, unnecessary pretrial hearings in another tribunal, and needless paperwork, we should permit litigants in the Superior Court to obtain directly (*i.e.,* by moving to amend pleadings) the same kind of remedy available indirectly by resort to multiplicity of action. Appellant bolsters the logic of this argument by drawing our attention to two reported decisions of the Appellate Division of the New York Supreme Court approving rulings of the New York City Civil Court, which allowed amendments to complaints previously filed in the Municipal Court where the jurisdictional limit was $3,000, up to the larger figure in force in the successor court.[3] While these decisions are based on the sound policy of discouraging circuity of action, the statute construed is different in one crucial respect from ours. Under the New York statute, a case may be removed from a pet-

ty court to the Supreme Court which—despite its name—is the trial court of general jurisdiction in that state. That court is then vested with authority either to retain jurisdiction or to remand it for trial to some local court of limited jurisdiction. But under District of Columbia law, a plaintiff has no right to remove a case to a federal court. In order to docket a complaint there, he must start afresh. Moreover, this court always has strictly construed statutes limiting jurisdiction of local trial courts.[4]

In support of the *remittitur* of the trial court, appellee argues that he, and other defendants similarly situated, would be prejudiced if a plaintiff who had limited his claim at the time of the original filing could then by amending the ad damnum take advantage of the higher jurisdictional limit in the new court. Appellant counters this argument by saying that a timely pretrial amendment would give defendants sufficient notice of a change in position. Nevertheless, there would be some element of prejudice. Trial by jury, as all lawyers know, is the province of chance. That is one reason why so many tort cases, particularly those involving personal injuries in automobile accidents, are settled out of court. Certainly a defendant who elects the risk of trial, rather than settling on the plaintiff's terms, might well be aggrieved if the limit of his hazard should be wiped out by the accident of an intervening legislative enactment.

But wholly aside from such considerations, the wording of the statute cited in his memorandum impels us to hold that the decision of the trial judge should be affirmed. Our conclusion that his analysis

2. Of course, the tactic of voluntarily dismissing an action orginally filed in General Sessions and beginning anew in the District Court could only be done in cases —unlike the one before us—where the statute of limitations had not run.

3. Klein v. 124–132 White Street, Inc., 41 Misc.2d 601, 246 N.Y.S.2d 277 (1963) and Sobelsohn v. Pincus, 41 Misc.2d 913, 246 N.Y.S.2d 419 (1964), citing

with approval Cohen v. Bezold, 37 Misc. 2d 1081, 236 N.Y.S.2d 726 (N.Y.C.Civ. Ct., 1963) and Dolce v. Cayuga Foundation Corp., 38 Misc.2d 1078, 239 N.Y.S. 2d 593 (*id.,* 1963).

4. *See* District of Columbia v. Diener's Linoleum and Tile Co., Inc., D.C.App., 278 A.2d 684 (1971); Reeves v. Yale Transport Corp., D.C.Mun.App., 128 A.2d 792 (1957).

of the relevant provisions of the Reorganization Act was an accurate reflection of Congressional intent is strengthened by reference to another section of the Act not mentioned in his opinion, *viz.*, D.C.Code 1967, § 11–922 (Supp.IV, 1971), relating to the transfer of actions from the United States District Court to the Superior Court during the transitional period. Subsection (a) authorizes the federal judges to certify for trial in the Superior Court civil actions begun in the District Court prior to the effective date of the Reorganization Act " . . . where it appears to the satisfaction of the court at or subsequent to any pretrial hearing . . . that the action will not justify a judgment in excess of $10,000 . . . ." Subsection (b) authorizes similar discretion for the next thirty months with respect to actions begun in the District Court during that period, if it appears that "the action will not justify a judgment in excess of $50,-000."

In enacting this section, it appears that Congress took account of the possibility that some of the transferred actions when tried in the Superior Court might result in larger sums than the preliminary estimates of the certifying federal judge. Congress specifically dealt with this contingency by including in the third subsection, the sentence—

. . . The Superior Court shall thereafter treat the case as though it had been filed originally in that court, except that the jurisdiction of the court shall extend to the amount claimed in the action even though it exceeds the applicable jurisdictional limitation.[5]

We regard the inclusion of this provision in § 11–922 and the absence of a corresponding provision in § 11–921 as significant. Manifestly, it reveals a deliberate

intent on the part of Congress to limit recovery in cases originally docketed in General Sessions to the maximum amount then in effect.

Affirmed.

---

5. This provision, originally enacted with respect to the establishment of the Court of General Sessions by Act of December 23, 1963, Pub.L. 88–241, § 1, 77 Stat. 490, later incorporated into D.C.Code 1967 as § 11–962, was expressly included in the new Act *in haec verba* concerning cases transferred from the District Court to the Superior Court.