**SECRETARY OF LABOR,**
Plaintiff, Appellee,

v.

**A. Michael DeSISTO,**
Defendant, Appellee,

**The DeSisto Schools, Inc.,**
Defendant, Appellant.

**Elizabeth DOLE, Secretary of Labor,**
Plaintiff, Appellant,

v.

**A. Michael DeSISTO, et al.,**
Defendants, Appellees.

Nos. 90–1870, 90–1937.

United States Court of Appeals,
First Circuit.

Heard Jan. 10, 1991.

Decided March 29, 1991.

Stephen M. Sheehy, with whom Howard M. Brown, Boston, Mass., Thomas M. Looney, Hyde Park, Mass., and Kaye, Fialkow, Richmond & Rothstein, Boston, Mass., were on brief for A. Michael DeSisto and DeSisto Schools, Inc.

Claire Brady White, Atty., U.S. Dept. of Labor, with whom Robert P. Davis, Sol. of Labor, Monica Gallagher, Associate Sol., William J. Stone, Counsel for Appellate Litigation, U.S. Dept. of Labor, Washington, D.C., were on brief for Secretary of Labor.

Before TORRUELLA and SELYA, Circuit Judges, and POLLAK,* Senior District Judge.

TORRUELLA, Circuit Judge.

The Secretary of Labor filed this action against The DeSisto Schools, Inc. ("the Schools") and the Schools' founder and director, A. Michael DeSisto, alleging violations of the minimum pay and overtime requirements of the Fair Labor Standards Act ("FLSA" or "Act"), 29 U.S.C. § 201 *et seq.* Following a one-day bench trial, the district court concluded that the Schools were liable for $951,399.18 in unpaid back wages and liquidated damages. The Schools appeal from that judgment. The court also found that Mr. DeSisto was not individually liable as an employer under the Act, and declined to issue an injunction against future violations. The Secretary appeals from those decisions. Because we find that the evidence was inadequate to support the findings of the district court, we vacate the judgment and remand for a new trial.

### FACTS

The DeSisto Schools, Inc. is a non-profit corporation operating two boarding schools located in West Stockbridge, Massachusetts, and Howey–in–the–Hills, Florida. The Schools specialize in educating and counseling troubled teenagers. Each dormitory at the Schools is supervised by a dormitory parent ("DP") and by two or three assistant dormitory parents ("ADPs"). The DPs and the ADPs are provided room and board on campus as well as a salary. They perform wake-up

---

* Of the Eastern District of Pennsylvania, sitting by designation.

and lunchroom duties, maintain contact with students' parents, insure that students take their medication, keep order in the dormitories, assure that rooms and bathrooms are clean, and help to find runaways. They are generally on call for emergencies, including those arising at night. In addition, the ADPs perform classroom teaching duties; ADPs are sometimes referred to at the Schools as "teachers/dorm parents." The Schools also employ grounds, kitchen and maintenance personnel who are classified as blue collar workers.

Contributing both to the commencement of this litigation and to the district court's judgment was a Schools practice known as "firing." "Firing" involved docking the wages of employees who were found to have violated a school rule. An employee on "fired" status continued to perform his or her normal duties while being paid only a fraction of the usual salary. At least one employee worked on "fired" status for as long as three months at a stretch.

## PROCEEDINGS BELOW

The complaint alleged that back wages were owed to 244 employees at both DeSisto campuses for the years 1982–1987. Defendants (the Schools and Mr. DeSisto individually) raised no affirmative defenses. Following discovery, the Secretary moved for summary judgment on liability and amount of damages, claiming that the DPs and ADPs were not exempt teaching professionals under the FLSA. Defendants cross-moved for partial summary judgment on the issue of the exempt or non-exempt status of DPs and ADPs.

The district court found that the DPs were not exempt, but that the ADP job description "technically" fit within the FLSA exemption for teachers. Thus, defendants' motion for partial summary judgment was granted with respect to the ADPs, while the Secretary's motion was granted with respect to the DPs. The court ordered a hearing on the issues of damages for violations involving DPs and blue collar workers, recordkeeping violations, willfulness, and liquidated damages.

At a pretrial hearing the court limited the trial witnesses to the Department of Labor ("DOL") compliance officer who had investigated the case and two other witnesses, one for each side. The court also urged the parties to agree on the assignment of individual employees into the various categories (DP, ADP, or blue collar worker). The court stated that absent such agreement the burden would be on defendants to prove each employee's category at trial. No such agreement was reached by the parties.

At the one day trial, the Secretary presented two witnesses, DOL compliance officer David Turgeon and former Schools employee John Walsh, as well as several exhibits. Defendants offered the testimony of Mr. DeSisto. Defendants also submitted summary exhibits purporting to allocate the disputed employees into the three employment categories: DP, ADP, and blue collar. The court also considered evidence which was not offered at trial but which had been filed with the Secretary's summary judgment motion. This evidence consisted of the depositions of former DOL compliance officer Leonard Mercieri (who preceded officer Turgeon on the investigation) and former Schools director Gregory Moffat, and a memorandum from the Schools' attorneys to the DOL circa 1981.

The court held that the Schools had violated FLSA recordkeeping provisions, 29 U.S.C. § 211, and that the Secretary had succeeded in demonstrating unpaid work in the absence of adequate payroll records. The court also found that the Schools had utterly failed to prove that any employees actually spent the primary portion of their work time engaged in teaching. The summary exhibits, the court found, were not credible. For that reason, the court held that *none* of the employees was exempt from the FLSA. In awarding damages, the court followed the recommendations of the Secretary, except that the court reduced the back pay award to DPs and ADPs by 15% to account for part-time work and summer vacations.

The court declined to find that Mr. DeSisto should be individually liable as an em-

ployer under the economic reality test outlined in *Donovan v. Agnew*, 712 F.2d 1509 (1st Cir.1983). The court also stated that it found no reason to pierce the corporate veil under a traditional alter ego analysis.

Because the Schools had been on notice, through correspondence with the DOL dating back to 1981, that the blue collar workers were subject to the FLSA, and because they had failed to disclose to the DOL (when inquiring about the status of DPs) that DPs often received far less than their normal salaries due to the "firing" practice, the court found the violations to have been willful, subjecting the Schools to a third year of liability under the statute of limitations provisions in the FLSA. 29 U.S.C. § 255. For the same reasons, the court awarded full liquidated damages on the back wages. 29 U.S.C. § 216(b).

Finally, the court refused to enjoin the Schools from future violations. The court explained that an injunction was unnecessary because the FLSA already obligated the Schools to pay their employees properly.

Both parties complained to the district court about its judgment in various post-trial applications. In a second memorandum and order, the court denied all motions. This appeal and cross-appeal ensued.

## SUFFICIENCY OF THE EVIDENCE

The burden of proof in FLSA cases was set forth by the Supreme Court over forty years ago in a case that has well withstood the passage of time. In *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), the Court focused specifically on the problem manifested in this case: How can an employee demonstrate a violation of the Act when the duty and the ability to keep adequate records rests solely with the employer, the adverse party? Recognizing that "[t]he solution ... is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work," the Court imposed a significant burden on the employer. *Id.* at 687, 66 S.Ct. at 1192. The Court stated:

> In such a situation we hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result may be only approximate.

*Id.* at 687–88, 66 S.Ct. at 1192. Plainly, then, although the initial burden is on the employee (or, as here, the Secretary of Labor on behalf of the employees), that burden is a minimal one. Where the employer has failed to keep adequate employment records, it pays for that failure at trial by bearing the lion's share of the burden of proof.

In a typical FLSA case, the Secretary presents testimony from some of the affected employees as part of the proof of a prima facie case. It is well established that not all employees need testify in order to prove the violations or to recoup back wages. Rather, the Secretary can rely on testimony and evidence from representative employees to meet the initial burden of proof requirement.[1]

---

1. Following is a sampling of cases showing ratios of representative (testifying) employees to total employees receiving back wages: *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946) (8 out of 300 employees testified); *McLaughlin v. Ho Fat Seto*, 850 F.2d 586 (9th Cir.1988) (5 out of 28), *cert. denied*, 488 U.S. 1040, 109 S.Ct. 864, 102 L.Ed.2d 988 (1989); *Donovan v. Williams Oil Co.*, 717 F.2d 503 (10th Cir.1983) (19 out of 34); *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468 (11th Cir.1982) (23 out of 207 receiving an award; award denied to 56 non-testifying employees); *Brennan v. General Motors Acceptance Corp.*, 482 F.2d 825 (5th Cir.1973) (16 out of 26); *McLaughlin v. DialAmerica Marketing, Inc.*, 716 F.Supp. 812 (D.N.J.1989) (43 out of 393); *Marshall v. Brunner*, 500 F.Supp. 116 (W.D.Pa.1980)

To prove the case against the DeSisto Schools the Secretary offered the testimony of compliance officer Turgeon, who reported on the investigation methodology and explained his computations of back pay owed. The Secretary chose John Walsh as a representative employee witness. Walsh had been employed at the West Stockbridge campus from June 1979 through June 1984. He began his employment as an ADP, then worked as a DP, and then transferred into the director's position at the boys' farm dormitory. The farm was a special Schools program for the more troublesome students, such as those who had run away from the campus. Walsh's testimony drew from his general knowledge of operations at the Schools and from his personal experience as an ADP and a DP. He testified in broad terms about the hours worked by the DPs and ADPs and explained the "firing" practice. He did not testify at all about the blue collar workers. He also had no knowledge about operations and employees at the Florida campus.

The Secretary also submitted various pieces of documentary evidence, including the computation sheets used by compliance officer Turgeon in calculating back wages. Another of the Secretary's exhibits was a "dorm parent schedule" bearing the date May 1981. The schedule, which had been prepared by the Schools, showed that the work day of the DPs extended from 7:00 in the morning until 11:00 at night, with only about three hours left unscheduled.

■ We are highly aware that the Secretary's initial burden in these cases is minimal. *See Mt. Clemens Pottery*, 328 U.S. at 687–88, 66 S.Ct. at 1192–93. Nevertheless, it is not nonexistent, and we simply do not believe that the Secretary met that burden here. We have found no case, and the Secretary cited none at oral argument, holding that one employee can adequately represent 244 employees holding a variety

of positions at different locations.[2] *See* cases cited at n. 1, *supra*. Usually, an employee can only represent other employees only if all perform substantially similar work. *See McLaughlin v. Ho Fat Seto*, 850 F.2d 586 (9th Cir.1988) (garment factory workers), *cert. denied*, 488 U.S. 1040, 109 S.Ct. 864, 102 L.Ed.2d 988 (1989); *McLaughlin v. DialAmerica Marketing, Inc.*, 716 F.Supp. 812 (D.N.J.1989) (home telephone number researchers). In *Dole v. Snell*, 875 F.2d 802 (10th Cir.1989), for example, the DOL offered the testimony of one employee and the compliance officer to support an award to 32 employees. But in that case, unlike this one, all 32 employees held identical positions as cake decorators. Moreover, in *Dole v. Snell* the parties stipulated that the testifying employee was representative. *Id.* at 811. Where the employees fall into several job categories, it seems to us that, at a minimum, the testimony of a representative employee from, or a person with first-hand knowledge of, each of the categories is essential to support a back pay award. *See Donovan v. Simmons Petroleum Corp.*, 725 F.2d 83 (10th Cir.1983); *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468 (11th Cir.1982); *Dole v. Solid Waste Services, Inc.*, 733 F.Supp. 895 (E.D.Pa.1989), *aff'd*, 897 F.2d 521 (3d Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 3271, 111 L.Ed.2d 781 (1990). This testimony need not be given orally at trial, but it must be properly before the court as admitted evidence.

The Secretary's brief asserts that "there is no ratio or formula for determining the number of employee witnesses required to constitute a representative sample of employees; the adequacy of the representative testimony necessarily will be determined in light of the nature of the work involved, the working conditions and relationships, and the detail and credibility of the testimony." We have no quarrel with

---

(48 out of 93), *aff'd in part, rev'd in part,* 668 F.2d 748 (3d Cir.1982).

**2.** We recognize that the district court considered a deposition from former Schools employee Greg Moffat. We conclude below, however, that the deposition was not properly admitted

into evidence. Even if the deposition had been properly considered, we do not think that the ratio of two employees out of 244 suffices to make a case against the Schools. The contrast between this ratio and the cases cited at n. 1, *supra,* is stark.

that proposition. It is precisely those factors that convince us that the testimony here was inadequately representative. John Walsh worked at the farm program, which was not part of the main Stockbridge campus. Although he could certainly testify about his own hours and duties, and those of others employed at the farm program, and could, in the court's discretion, have been permitted to testify as to DP and ADP duties at the Massachusetts campus, he should not have been permitted to testify in a representative capacity for all other employees (including blue collar workers and those employed in Florida).

The testimony of compliance officer Turgeon does not adequately remedy the problem. Turgeon's testimony focused on the computations underlying the DOL's estimation of back wages due. For example, he explained that he assumed that the DPs and ADPs worked alternating 50 and 70 hour work weeks. This short/long schedule was based on the findings of Turgeon's predecessor, former compliance officer Mercieri. Turgeon himself did not conduct interviews with any DeSisto Schools employees; he stated at trial that he "strictly relied upon what was in the file at the time [he] received it." Mercieri, however, interviewed approximately five or six blue collar employees and ten or eleven DPs and ADPs. He also received approximately ten written responses to a questionnaire mailed to the employees. The court considered Mercieri's deposition, but solely for its "arithmetic"—the calculation of unpaid wages. Therefore the Mercieri deposition did not add any evidence establishing the existence of a pattern of violation in wages paid the DPs, ADPs and blue collar workers. Nor did Turgeon's testimony, which was substantially based on Mercieri's findings, add meaningful evidence supporting the Secretary's prima facie case. The evidence was simply inadequate to give rise to a "just and reasonable inference" as to the amount and extent of undercompensated work. *Mt. Clemens Pottery*, 328 U.S. at 687, 66 S.Ct. at 1192.

■ We recognize that insufficiency of the evidence would ordinarily call for a finding against the plaintiff. But, this case is different. It must be emphasized that this state of evidence arose at least in part due to the limit on witnesses—one per party, plus the compliance officer—imposed by the district court.[3] For this reason we pause to examine the discretion afforded a trial court in controlling the presentation of evidence before it. We quote the Supreme Court:

> The trial judge must meet situations as they arise and to do this must have broad power to cope with the complexities and contingencies inherent in the adversary process. To this end, he may determine generally the order in which parties will adduce proof; his determination will be reviewed only for abuse of discretion. Within limits, the judge may control the scope of rebuttal testimony, may refuse to allow cumulative, repetitive, or irrelevant testimony, and may control the scope of examination of witnesses. If truth and fairness are not to be sacrificed, the judge must exert substantial control over the proceedings.

*Geders v. United States*, 425 U.S. 80, 86–87, 96 S.Ct. 1330, 1334–35, 47 L.Ed.2d 592 (1976).

Rule 403 of the Federal Rules of Evidence enables a trial judge to exclude need-

---

**3.** The court's ruling took place at a pretrial hearing that was not transcribed. Nor was a formal pretrial ruling entered. We thus are unable to determine either the amenability of the parties to abide by the limit or its precise contours. We do note that neither the Secretary nor the defendants objected to the limit or proffered the testimony of additional witnesses. Frankly we are stunned at the apparent acquiescence of the parties to the one-witness limit. In this appeal each appears to claim that the other party should have objected because that party bore the burden of proof. As we have noted, both parties bore a burden: the Secretary was required to make an initial showing of undercompensated work, and defendants were required to rebut the inference and to prove any applicable exemptions. Normally a failure to object would preclude us from finding error. In this case, however, the one-witness limit and the resulting paucity of evidence so infected the entire proceeding that we are unable to review the case without considering the issue.

lessly cumulative evidence.[4] Rule 403, however, requires a balance of probative value against the negative consequences of using a particular piece of evidence. "Certainly, Rule 403 does not mean that a court may exclude evidence that will cause delay regardless of its probative value. If the evidence is crucial, the judge would abuse his discretion in excluding it." *Weinstein's Evidence* ¶ 403[6] at 403–99 (1990).

The record here does not show any indication that the court undertook a balance before limiting the presentation of evidence to three witnesses in total. Indeed, there was nothing on which to base such a balance, as the parties had not even reached the stage of listing proposed witnesses. Thus there was no proffer of evidence and no exclusion of evidence, under Rule 403 or any other rule. Instead, there was an apparently arbitrary limitation imposed in the interest of conserving judicial resources.

In this era of crowded dockets[5] it is perhaps increasingly common for a trial court to attempt to speed things along by imposing limits on the attorneys. Judge Bertelsman of the Eastern District of Kentucky has authored a marvelous account of the problem[6] and an acute justification (based on Fed.R.Evid. 403 and 611(a)) for his solution: imposing reasonable time limits on both civil and criminal trials in the exercise of the court's reasonable discretion. *United States v. Reaves*, 636 F.Supp. 1575, 1578 (E.D.Ky.1986). This court finds nothing at all to criticize in a district court's effort to eliminate needless time-wasting. We agree with the Seventh Circuit that the practice of fixing a period of time for the trial "is not, *per se*, an abuse of discretion. This exercise of discretion

may be appropriate in protracted litigation *provided that witnesses are not excluded on the basis of mere numbers."* MCI Communications Corp. v. American Tel. & Tel. Co., 708 F.2d 1081, 1171 (7th Cir.), cert. denied, 464 U.S. 891, 104 S.Ct. 234, 78 L.Ed.2d 226 (1983) (emphasis supplied). The emphasized portion is, we think, a crucial qualification to the proposition stated by the Seventh Circuit.

The identical concern—that witnesses not be excluded arbitrarily—was voiced by the Second Circuit in *Padovani v. Bruchhausen*, 293 F.2d 546 (2d Cir.1961). The district court in that products liability case ruled that the plaintiff could only offer the testimony of himself and his spouse. No experts and no other lay witnesses were allowed. In holding that this limit was an abuse of discretion, the Second Circuit:

> realize[d] that to make pre-trial procedure effective appellate interference with trial court discretion must be kept to a minimum; and we are apprised of the devoted efforts of this court to meet a mounting burden of congestion with all weapons it can command, including notably those afforded by [Fed. R. Civ. P.] 16. Nevertheless, we do have an overriding responsibility to see that justice is done between litigants before the court.

*Id.* at 547–48. The court concluded that "in no event at this pre-trial stage should witnesses be excluded because of mere numbers without reference to the relevancy of their testimony." *Id.* at 550. Such a pre-trial exclusion appears to be exactly what took place here.

Plainly, we are reluctant to hold that a district court has abused its discretion in its

---

**4.** Rule 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence.

**5.** We suspect that the history of the courts is a history of crowded dockets. *See, e.g., United States v. Murray*, 275 U.S. 347, 356, 48 S.Ct. 146, 148, 72 L.Ed. 309 (1928). Nonetheless there is a sense that the congestion is worsening.

**6.** In his words:

> It would seem that early in the career of every trial lawyer, he or she has lost a case by leaving something out, and thereupon resolved never again to omit even the most inconsequential item of possible evidence from any future trial. Thereafter, in an excess of caution the attorney tends to overtry his case by presenting vast quantities of cumulative or marginally relevant evidence.

*United States v. Reaves*, 636 F.Supp. 1575, 1576 (E.D.Ky.1986).

effort to control its own docket. Our precedent shows a pronounced preference to defer to the district court's discretion, particularly in this delicate area. *See, e.g., Miller v. Town of Hull*, 878 F.2d 523, 529 (1st Cir.1989); *United States v. Foley*, 871 F.2d 235, 238 (1st Cir.1989); *see also Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 529 (1st Cir.1991) (abuse of discretion is equivalent to "a clear error of judgment" on the part of the district court). We could name many more such cases, but shall limit ourselves to a discussion of one presenting a situation strikingly similar to the one here, albeit with a different result. In *Donovan v. Burger King Corp.*, 672 F.2d 221 (1st Cir.1982), the Secretary of Labor alleged FLSA violations at 44 Burger King restaurants. At issue was the exempt or non-exempt status of assistant managers. The district court evaluated the 44 restaurants and chose six that it considered representative. Testimony was then allowed from six witnesses, one assistant manager from each restaurant. On appeal, the defendant complained that the limitation was improper. We disagreed, stating:

> The court has broad discretion under Fed. R. Evid. 403 to prevent the "needless presentation of cumulative evidence." *See* 10 Moore's Federal Practice § 403.13 (1981). We see no abuse of discretion here. The court found that all of the testimony thus far had been "substantially the same," and counsel for Burger King agreed with this both at trial and in the stipulation. The evidence was thus admittedly cumulative, and it was within the province of the district court to exclude it.

*Id.* at 225.

While the *Burger King* case supports the proposition that the trial court has considerable leeway in molding the trial, it also demonstrates the importance of performing the Rule 403 balance and taking care to ensure that excluded evidence is merely cumulative. The case before us does not appear to have received the same degree of consideration.[7] For that reason, we hold that the witness limitation constituted an abuse of discretion in that it prevented both parties from presenting sufficient evidence on which to base a reliable judgment. *See Shad v. Dean Witter Reynolds Inc.*, 799 F.2d 525, 530 (9th Cir.1986) (error to exclude expert witness under Rule 403); *Johnson v. United States*, 780 F.2d 902, 904–06 (11th Cir.1986) (same); *Martin v. Weaver*, 666 F.2d 1013, 1020 (6th Cir.1981) (abuse of discretion to exclude rebuttal witness), *cert. denied*, 456 U.S. 962, 102 S.Ct. 2038, 72 L.Ed.2d 485 (1982). The appropriate remedy is a new trial.

## OTHER ISSUES

■ Although our resolution of this case renders unnecessary detailed scrutiny of the other asserted errors, we wish to address some of them to ensure that they do not recur. *See DeVasto v. Faherty*, 658 F.2d 859, 864 (1st Cir.1981). First, when rendering its judgment, the district court referred not only to the testimony and documents properly introduced into evidence at trial, but also to certain depositions that had not been put into evidence. We review a district court's determinations on the admission of evidence under an abuse of discretion standard. *Brown v. Trustees of Boston University*, 891 F.2d 337, 346 (1st Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). We find that error was committed here. Neither the requirements of the hearsay exceptions cited by the court (Fed.R.Evid. 804(a)(5) and 803(24)) nor those of Fed.R.Civ.P. 32 were satisfied. Particularly, we do not think that the "witness unavailable" hearsay exceptions apply when the unavailability of a witness is due solely to a limit imposed by the court. The court also relied upon a memorandum that had been attached to the Secretary's motion for summary judgment. If used, the memorandum should have been properly introduced. *White v. Vathally*, 732 F.2d 1037, 1041–42 (1st Cir.), *cert. denied*, 469 U.S. 933, 105 S.Ct. 331, 83 L.Ed.2d 267 (1984). We presume that the

---

7. We also note that in *Burger King* only one category of employee was the subject of dispute, a fact which further distinguishes that case from the one before us.

parties will take care at the new trial to ensure that their evidence is admitted.

The Schools also complain about the conclusions reached by the district court on the issues of the willfulness of the FLSA violations and the statute of limitations, and the Secretary's cross-appeal challenges the court's rulings on the personal liability of Mr. DeSisto and the appropriateness of an injunction. Our review of the court's opinion convinces us that the court applied the proper legal standard in reaching each conclusion. *See McLaughlin v. Richmond Shoe Co.*, 486 U.S. 128, 135, 108 S.Ct. 1677, 1682, 100 L.Ed.2d 115 (1988) (FLSA willfulness); *Donovan v. Agnew*, 712 F.2d 1509, 1513–14 (1st Cir.1983) (FLSA employers); *Donovan v. Crisostomo*, 689 F.2d 869, 875 (9th Cir.1982) (FLSA statute of limitations); *Hodgson v. Humphries*, 454 F.2d 1279, 1283 (10th Cir.1972) (same); *Marshall v. Chala Enterprises Inc.*, 645 F.2d 799, 802 n. 8 (9th Cir.1981) (injunctive relief under the FLSA). It is possible, of course, that additional evidence obtained in the new trial might change the results; hence, we remand these issues for consideration at the new trial.

 The Schools' contention that the court erred in choosing to disregard documentary evidence showing the division of employees into categories must be completely rejected. The court found that the charts had been prepared specifically for the purpose of this litigation, and that there was no underlying support for their validity. There is absolutely no requirement that a trial court must accept at face value any evidence before it, even if it is the only evidence on a certain issue. *See McLaughlin v. Ho Fat Seto*, 850 F.2d at 589 ("We accord great deference to the trial court's opportunity to assess the credibility of witnesses.").

 Finally, we affirm the court's grant of summary judgment on the issue of the non-exempt status of the DPs. The employer in an FLSA case bears the burden of proving that its employees are exempt. *Arnold v. Ben Kanowsky*, 361 U.S. 388, 394 and n. 11, 80 S.Ct. 453, 457 and n. 11, 4 L.Ed.2d 393 (1960). An exemption is to be narrowly construed against the employer asserting it. *Id.* at 392, 80 S.Ct. at 456. Defendants here failed as a procedural matter to raise the exemption as an affirmative defense. Fed.R.Civ.P. 8(c), 12(1); *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974). Substantively, defendants did not prove that the DPs should be classified as teachers under the applicable regulations. 29 C.F.R. 541.3(a)(3). *Donovan v. The Fessenden School*, 92 Lab.Cas. ¶ 34,125 (D.Mass.1981), where the court found that "dormitory masters" were FLSA exempt instructors, is readily distinguishable. We find more similar facts in *Beaston v. Scotland School for Veterans' Children*, 693 F.Supp. 234 (M.D.Pa.1988), *aff'd*, 869 F.2d 587 (3d Cir.1989), where boarding school houseparents were not considered exempt.

## CONCLUSION

Considering that the conduct of this trial was motivated by the district court's commendable desire to conserve judicial resources, it is ironic and somewhat distressing that we must vacate the judgment and order a new trial. Nevertheless, that is what we must do. Given the substantial time already invested in learning the facts and the relevant law in this case, we suggest that it be returned to the same trial judge for further proceedings.

*Summary judgment in favor of the Secretary on the issue of the non-exempt status of the dormitory parents is affirmed. On the issue of violations and damages involving dormitory parents and "blue collar" workers, and as to the issues of Mr. DeSisto's personal liability and the need for injunctive relief, we vacate the judgment and remand for a new trial. All parties to bear their own costs on this appeal.*