*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 18-CV-187 & 18-CV-360

DISTRICT OF COLUMBIA, APPELLANT/CROSS-APPELLEE,

v.

ISAIAH BONGAM, APPELLEE/CROSS-APPELLANT

AND

DYNAMIC VISIONS, INC., APPELLEE.

Appeals from the Superior Court of the
District of Columbia
(CAB-5472-07 & CAB-8516-12)

(Hon. Todd E. Edelman, Trial Judge)

(Argued June 3, 2020                                        Decided March 31, 2022)

*Lucy E. Pittman*, Assistant Attorney General, with whom *Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKhan*, Solicitor General at the time of argument, and *Caroline S. Van Zile*, Deputy Solicitor General, were on the brief, for appellant/cross-appellee.

*Isaiah Bongam*, *pro se*.

*C. Jude Iweanoge* for appellee Dynamic Visions, Inc.

Before BLACKBURNE-RIGSBY, *Chief Judge*, and RUIZ, and THOMPSON[*] *Senior Judges*.

BLACKBURNE-RIGSBY, *Chief Judge*: Following a bench trial, the trial court ruled that Dynamic Visions, Inc. and its Chief Executive Officer Isaiah Bongam violated the District of Columbia Wage Payment & Collection Law ("DCWPCL"), D.C. Code §§ 32-1301 to -1312 (2019 Repl.), by failing to pay former employees earned wages. The trial court limited liability and damages to forty-nine former employees who testified at trial, excluding from the judgment eighty-seven putative former non-testifying employees on the basis that no competent evidence was presented proving these individuals were employees and were not compensated for work performed. Both the District of Columbia Office of the Attorney General (the "District") and Mr. Bongam appealed, but Dynamic Visions did not. For the reasons discussed, we affirm.

## I.      Factual and Procedural History

---

[*] Senior Judge Thompson was an Associate Judge of the court at the time of argument. On October 4, 2021, she was appointed as a Senior Judge but she continued to serve as an Associate Judge until February 17, 2022. *See* D.C. Code § 11-1502 & 1504(b)(3) (2012 Repl.). On February 18, 2022, she began her service as a Senior Judge. *See* D.C. Code § 11-1504.

Dynamic Visions, a defunct Maryland corporation, and its Chief Executive Officer ("CEO") Isaiah Bongam[1] (collectively "Dynamic Visions"), provided home health services in the District of Columbia up until 2012. One hundred and thirty-six of Dynamic Visions' former home health employees filed complaints between 2005 and 2010 with the District of Columbia Department of Employment Services Office of Wage-Hour Compliance ("OWH"), alleging that Dynamic Visions was their employer and owed them unpaid wages. OWH investigated the allegations, gave Dynamic Visions notice and an opportunity to respond, and held at least one "fact-finding conference." During OWH's investigation, Dynamic Visions failed to provide OWH with any payroll or employment records; instead, it contended that

---

[1] Mr. Bongam argues that the trial court erred in finding him an "employer" under D.C. Code § 32-1301 *et seq.*, as he maintains that he was merely an employee. We agree with the trial court's determination that Mr. Bongam was an employer pursuant to the definition provided in D.C. Code § 32-1301 (1B), where Mr. Bongam (1) was the CEO, (2) was a majority shareholder and registered agent, (3) known by the claimants as "boss," "owner," or "director," (4) controlled almost all aspects of the business, and (5) and as some employees testified, was personally involved in resolving wage payment issues by compensating them in cash. D.C. Code § 32-1301 (1B) (defining "employer" as "every individual, partnership, firm, general contractor, subcontractor, association, corporation, the legal representative of a deceased individual, or the receiver, trustee, or successor of an individual, firm, partnership, general contractor, subcontractor, association, or corporation, employing any person in the District of Columbia"); *see Ventura v. Bebo Foods, Inc.*, 738 F. Supp. 2d 1, 5-6 (D.D.C. 2010) (construing broadly the definition of "employer" to serve the remedial purpose of the DCWPCL; holding that under the totality of the circumstances, a corporate officer can be an "employer" if they have operational control over the corporation).

the 136 complainants did not work for Dynamic Visions, and denied that it failed to pay them. OWH concluded its investigation and assigned the case to the Attorney General for the District of Columbia for enforcement, pursuant to D.C. Code § 32-1306 (2019 Repl.). *See* D.C. Code § 32-1308 (a)(1)(C)(vii) (authorizing actions by one or more employees to designate a representative to maintain the action, which permits designation of the Attorney General for the District of Columbia as the representative). The District filed two separate actions in Superior Court, which were later consolidated, asserting DCWPCL wage violations for breach of contract on behalf of the 136 complainants, jointly and severally against Dynamic Visions and Mr. Bongam.

The evidence at the 2017 bench trial included testimony from OWH Compliance Program Specialist Yvonne Hood; the 136 wage complaint forms; an adverse inference for missing evidence against Dynamic Visions; and testimony from forty-nine complainants. The trial court found that Dynamic Visions provided "only a small amount of materials related to payroll," and none of it was "for the relevant period" in question.

Ms. Hood testified about OWH's wage-theft investigative process. According to Ms. Hood, wage-theft complaints filed with OWH are typically accompanied by

documents — such as "pay stubs or pay statements, timesheets, policies, [and] handbooks" — though supporting documents are not required. Individuals without supporting documents "state on the complaint forms the hours that they worked" and specify "the time periods [for which] that they had not been paid"; it is then the OWH's job to "investigate the merits" of their complaints.[2] The trial court prevented the District from eliciting testimony from Ms. Hood regarding OWH's administrative conclusions and factual findings on the 136 complaints filed against Dynamic Visions regarding whether the employees worked and the amount worked. The trial court stated it could not "defer to the District's conclusions," and had to instead "make [its] own conclusions" concerning the complainants claimed uncompensated work.

Following the trial court's preliminary ruling that the OWH complaint forms and other documents pertaining to the non-testifying complainants would be admitted only to show that the claims were filed with OWH, the District filed a motion to introduce the eighty-seven non-testifying complainants' sworn complaint

---

[2] As part of the investigation, OWH contacts employers to give notice of and an opportunity to respond to the complaint(s) filed by individual(s); contacts employees and witnesses; and most importantly, reviews the documents received from the complainant(s) and/or the employer. Ms. Hood stated that based on her experience, OWH did not pursue complaints that it could not substantiate.

forms for lost wages for the truth of the matters asserted therein.[3]  Alternatively, the District requested that the trial court impose an adverse inference against Dynamic Visions for missing evidence and discovery violations, arguing that Dynamic Visions failed to maintain and produce payroll records that would either corroborate or contradict the veracity of the matters asserted in the 136 complaint forms. Dynamic Visions opposed the motion, asserting: (1)  it provided a small amount of materials related to payroll to the District because the FBI had seized all of its business records;[4] (2) it was not obligated to maintain payroll records for more than three years, unless it was placed on notice to do so, per the DCWPCL; and (3) such

---

[3] The District argued: (1) "that the documents should be admitted under the exception to the hearsay rule for documents affecting an interest in property," pursuant to Federal Rules of Evidence 803(15); and (2) "that policies underlying the . . . DCWPCL support admission of the documents."  The District has not sought our review of the trial court's rejection of the argument that the excluded OWH documents should be admitted under the property interest hearsay exception.  The District also neither asserted to the trial court nor on appeal that the documents attached to the complaint forms were separately admissible under other hearsay exceptions.  The DCWPCL policy argument, however, is relevant to our conclusion.

[4] The trial court found that even though the FBI seized business records from Dynamic Visions' office and Mr. Bongam's home in December of 2008, they subsequently provided him with digital copies of many of those records. Additionally, Dynamic Visions should have been in possession of business records created after 2008, which is the timeframe when most of the complaints were filed with the OWH.

notice by the OWH only came several years after the relevant time period, by which point virtually all of the records sought by the District would have been destroyed.

Following a hearing, the trial court ruled that Dynamic Visions' production of payroll records was insufficient because the materials were not for the relevant time period. Furthermore, it ruled that Dynamic Visions was in fact on notice to maintain the records because, as Ms. Hood testified, once the complaints were lodged, the employer was notified that a dispute existed and that it had been referred to the District for resolution and for potential prosecution.[5] Thus, the trial court found that the evidence that would elucidate the transaction was "peculiarly available to Dynamic Visions," such that its failure to maintain that evidence subjected it to the adverse inference requested by the District.

The court determined that it would apply an adverse inference as to damages or the specific calculation of the damages, and, with respect to the testifying employees, as a missing evidence inference for the employment records not produced by Dynamic Visions. The trial court went on to express concern regarding "whether this inference alone could provide sufficient evidence of what the District of Columbia needs to show for the non-testifying claimants;" i.e., "[i]s it enough to

---

[5] The evidentiary record places the initial notice at around August of 2005.

demonstrate by a preponderance of the evidence that these [non-testifying] workers did the work and were not [compensated]?" Thus, the trial court declined to admit the complaint forms and documents on behalf of the eighty-seven non-testifying complainants as substantive evidence. The trial court concluded that (1) the contents of the OWH complaints were inadmissible hearsay despite Dynamic Visions' discovery violations;[6] and (2) that the complaints did not qualify under a hearsay exception or for the statutory purposes of the DCWPCL because the contents were not wholly trustworthy, the complaints being requests or claims for money and not prepared for other legal purposes.

The forty-nine testifying complainants stated that they were employees of Dynamic Visions who worked and were not paid wages. They provided details of

---

[6] Based on its consideration of the *Anderson v. Mt. Clemens*, 328 U.S. 680 (1946), precedent, as well as *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016), and *Ventura*, 738 F. Supp. 2d at 6-8, the trial court opined that:

> "[N]one of these cases stand for the proposition that the remedial purposes of the DCWPCL allowed the [c]ourt to rely on hearsay evidence to establish the entirety of the complainant's claim as opposed to the details of his damages. Here I would have to be relying on these documents even for proof that the non-testifying employees worked for Dynamic Visions at all, much less that these employees did not get paid. . . . But, I find that by itself, that certainly does not justify considering these documents for the proof of the matter asserted therein."

Dynamic Visions' hiring and payroll processes, and outlined requirements for employees to submit timesheets and pick up paychecks from the company's office. They testified that, during their employment, Dynamic Visions unilaterally made improper deductions from their paychecks, issued paychecks that were returned for insufficient funds, and, in some cases, stopped issuing paychecks altogether. Some complainants testified that their paychecks did not always list Dynamic Visions, but instead listed other entities: Care First Network, LLC; Alpha Home Health Care, LLC; or Alpha Health Care, Inc. ("sham companies"). Some complainants also testified that Dynamic Visions' wage deduction practices required them to agree to payroll deductions, which were explained as withholdings to pay future taxes; however, those who agreed to such withholdings never received refunds.

Based on the forty-nine complainants' testimony, and Dynamic Visions' failure to comply with production of evidence, the District argued relying on *Mt. Clemens*, 328 U.S. 680, that the trial court should accept the prima facie case of wage theft established by the forty-nine testifying complainants as a "representative sample" of wage theft for the entire group of 136 complainants.[7]

---

[7] The District argued that if the trial court concluded that the District established a prima facie case of wage theft against the employer on the basis of some of the complainants' testimony (that they were employees who performed work and were not compensated), then the District is entitled to use that evidence as proof of a prima facie case for all complainants.

The trial court declined to adopt the District's representative sample argument. The trial court explained that other than the adverse inference "no competent evidence was presented at trial as to any element of the DCWPCL claim" with respect to the non-testifying witnesses. The trial court stated that the District's argument that the adverse inference can fill in the missing proof "would be a different and much more significant use of the missing evidence inference or adverse inference than employed for the testifying witnesses."[8] It was the trial court's position that

> [T]he District can choose to call as many or as few witnesses as it chooses. Ultimately, the District bears the burden of proof. Without hearing evidence, the [c]ourt is not in a position to rule on whether any particular employee is "similarly situated" to any other employee . . . . Only after the District has presented, at trial, its evidence as to those employees it claims are similarly situated to other employees would it be appropriate to ask the [c]ourt to rule on whether the employees are similarly situated.

---

[8] *See supra*, note 3. The District did not argue and the trial court did not consider the evidentiary impact of appellees' statement that none of the complainants were employed by them or, once the trial court found otherwise based on the evidence presented by the complainants who testified, whether any inference favorable to the non-testifying complainants could be drawn from the appellees' misrepresentation concerning their employment status.

First, the trial court ruled that the forty-nine testifying complainants were credible and were indeed former employees of Dynamic Visions who worked during the period covered by their claims. As for liability against Mr. Bongam, the court found that "the evidence overwhelmingly and really undisputedly demonstrate[d] that Mr. Bongam qualified as an employer." *See* D.C. Code § 32-1301(1B). Further, it found that the companies that were sometimes listed on the complainants' paychecks "simply acted as sham companies or alter egos of Dynamic Visions." Finally, the trial court applied an adverse inference for missing evidence, finding that Dynamic Visions' employment documents, had they been produced, would have been favorable to the forty-nine complainants' assertions that they worked for Dynamic Visions. It explained, however, that it did not give significant evidentiary weight to the adverse inference, because its conclusion was based solely on the evidence presented by the District, and would have come out the same with or without the missing evidence inference.

The trial court also credited the "overwhelming majority" of testimony from the forty-nine complainants that Dynamic Visions failed to pay earned wages — the "witnesses remembered most of the central details of what happened, and readily acknowledged what they could not [remember];" many of them "also submitted other pieces of supporting documentation in support of their damage." As to the

amount of damages due, the trial court held that the District easily proved that Dynamic Visions failed to pay wages to the testifying employees within the period required by statute, crediting the employees' testimony that "no payment was [paid] timely or at all."

Regarding the eighty-seven non-testifying complainants, the trial court concluded that the District did not present competent evidence establishing they were employees who were not compensated for work performed, and therefore, the court could not impose liability based on the adverse inference alone. The court reiterated that the complaint forms and supporting documents were "hearsay and not admissible for the truth of the matters asserted on the documents"; the documents were admitted "to show that these individuals filed [] complaint[s] at the OWH, and that [their] supporting documents were included in the complaint files." On this point, the trial court found that "no competent evidence was presented at trial" with respect to the eighty-seven non-testifying complainants:

> [T]he District is, essentially, asking the court to permit the adverse inference to substitute for the evidence that it would need to prove its case. In other words, the District is asking for the court to rule that, while there was no competent evidence produced in support of the claims of these [complainants], because the court has employed the adverse inference, it will, nonetheless, sustain those claims. And that is not a step that the court is willing to take.

Thus, with respect to the eighty-seven non-testifying complainants, the court ruled against the District, finding that it did not prove by a preponderance of the evidence that Dynamic Visions violated the DCWPCL. However, the trial court ruled in favor of the District with respect to the group of forty-nine testifying employees, that Dynamic Visions and Mr. Bongam were jointly and severally liable in the amount of $314,861.86 — that is, $157,430.93 in unpaid wages pursuant to D.C. Code § 32-1306(a)(2)(A)(iii)(I), as well as $157,430.93 in liquidated damages pursuant to D.C. Code § 32-1303(4). The trial court further broke down the award for the group of forty-nine employees in the following manner. Thirty-eight employees recovered the full amount of damages requested. Eight employees were awarded a reduced amount of the damages requested, because the court found that there was "some error in the amount that [these employees] had originally claimed," or that they "made damages claims that were undermined, in part, by the documents that were provided" by the employees themselves. Three employees were denied recovery entirely, because the court "found more significant problems" with their testimony due to the "level of imprecision about the amount of damages." The District and Mr. Bongam appealed. We now review these consolidated appeals.

## II.    Discussion

In an appeal from a bench trial, we review the trial court's legal conclusions de novo and factual findings for clear error. *See, e.g.*, *Ballard v. Dornic*, 140 A.3d 1147, 1150 (D.C. 2016); D.C. Code § 17-305(a) (2012 Repl.). Likewise, "[w]e review the factual findings underlying the trial court's evidentiary ruling for clear error and the decision whether to admit or exclude the proffered statement based on those factual findings for abuse of discretion, recognizing that it is necessarily such an abuse for the trial court to employ incorrect legal standards." *Holmon v. State*, 202 A.3d 512, 517 (D.C. 2019) (citation and internal quotation marks omitted).

The DCWPCL provides that "a person aggrieved by a violation of this chapter . . . may bring a civil action . . . against the employer," D.C. Code § 32-1308(a)(1)(A), "on behalf of all employees similarly situated." D.C. Code § 32-1308(a)(1)(C)(vii).[9] The District "acting in the public interest, including the need to deter future violations," may bring the civil action on behalf of the employees. D.C. Code § 32-1306(a)(2)(A)(i-iii). In bringing a wage theft action it is the District's burden to prove (1) the complainants were employees of the employer, (2) who

---

[9] Subsection (vii) provides that such actions may be brought "[b]y the Attorney General for the District of Columbia pursuant to § 32-1306." D.C. Code § 32-1308(a)(1)(C)(vii).

performed work for the employer, (3) were not compensated or timely compensated for their work, and (4) the measure of damages due to the employees. *See Mt. Clemens*, 328 U.S. at 687-88. Should the Attorney General prevail they "shall be entitled to":

> (i) Reasonable attorneys' fees and costs;
>
> (ii) Statutory penalties equal to any administrative penalties provided by law; and
>
> (iii) On behalf of an aggrieved employee:
>
>> (I) The payment of back wages unlawfully withheld;
>>
>> (II) Additional liquidated damages equal to treble the back wages unlawfully withheld; and
>>
>> (III) Equitable relief as may be appropriate.

D.C. Code § 32-1306(a)(2)(A)(i-iii).[10] Where there are multiple aggrieved employees, the District may establish its case through a representative sample of the group of employees, after demonstrating the group is "similarly situated." D.C. Code § 32-1306(a)(2)(A) and -1308; *Sec'y of Labor v. DeSisto*, 929 F.2d 789, 793 (1st Cir. 1991).

---

[10] At the time the OWH complaints were filed the statute permitted liquidated damages in the amount equal to actual damages. D.C. Code § 32-1303(4) (2012 Repl.). The statute was amended in 2017, permitting the trebling of unpaid wages as an alternative to liquidated damages for the unlawful withholding of payment. 64 D.C Reg. 3987 (April 28, 2017). The District sought an amount of liquidated damages that was permitted at the time the OWH complaints were filed.

On appeal, the District contends that, in light of the testifying representative group and adverse inference, the trial court erred in determining that testimony from the representative group was insufficient to impose liability on Dynamic Visions for the entire group of aggrieved employees. The District proposes that, due to the lack of employment records maintained and provided by appellees, we should apply a minimal burden to the employees as found in the burden-shifting framework announced in *Mt. Clemens*. We disagree and hold that the District failed to establish by a preponderance of the evidence that the eighty-seven non-testifying complainants were former uncompensated employees.

The Court in *Mt. Clemens* does not explicitly state that employee status is an element of a prima facie case, but we think that it is implied, as the District must prove an employer's liability to the employees. Therefore, we take this opportunity to clarify our construction of the DCWPCL, and hold that the question of employee status is part of the complainants' burden in establishing a prima facie case under the DCWPCL.

The minimal burden discussed by the Supreme Court in *Mt. Clemens* is not as expansive as the District suggests. In *Mt. Clemens*, factory employees sought compensation pursuant to § 16(b) of the FLSA, for time spent either onsite or doing

preliminary activities before beginning their shifts. 328 U.S. at 682-84. The Court determined that the Circuit Court imposed an impractical standard of proof on the employees regarding the number of uncompensated hours worked which would impair the remedial nature of the FLSA in awarding benefits. *Id.* at 686-87. The framework announced in *Mt. Clemens* is specific to evidentiary considerations regarding the amount and extent of work performed by employees as part of calculating damages. *Mt. Clemens*, 328 U.S. at 687. The initial burden falls on the employees to produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* "[T]he burden [then] shifts to the [employer] to produce evidence refuting the [employees'] claim[s]." *Ventura*, 738 F. Supp 2d at 14. "When the employer has kept proper and accurate records," the District, acting on behalf of the "employee[s,] may easily discharge [its] burden by securing the production of those records." *Mt. Clemens*, 328 U.S. at 687. However, if the employer fails to discharge its burden of producing accurate or adequate records, the court must calculate and award damages, even if only an approximation.[11] *Id.* at 688.

---

[11] "The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had [it] kept records in accordance with the [statutory] requirements." *Id.* at 688. Likewise, "having received the benefits of such work, [the employer] cannot object to the payment for the work on the most accurate basis possible under the circumstances." *Id.* Notably, "the rule that precludes the recovery of uncertain and speculative damages . . .

*Mt. Clemens* does not support the District's position that appellees' failure to maintain or produce employment records vastly minimizes the complainants' burden of proof to establish they were employees who performed uncompensated work. In *Mt. Clemens*, the Supreme Court neither stated nor implied that deficient records also lessened an employee's burden of proving they were in fact employees and performed work. Instead, the Court explained that "[i]n such a situation we hold that an employee has carried out his burden *if he proves that he has in fact performed work for which he was improperly compensated* and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* at 687 (emphasis added). The Court expressly held that an employee maintains their separate burden of proving work performed. Therefore, a complainant must still prove he or she, in fact, was an employee who performed work without appropriate compensation. The "just and reasonable inference" holding of *Mt. Clemens* is specific to the approach for calculating damages where

---

applies only to situations where the fact of damage (harm) is itself uncertain." *Id.* In other words, when damage is certain — meaning that the District proved that the employees who worked were not compensated — "[t]he uncertainty lies only in the amount of damages arising from the statutory violation by the employer." *Id.* "In such a case 'it would be a perversion of fundamental principles of justice to deny all relief to the injured person[s], and thereby relieve the wrongdoer from making any amend for [its] acts.'" *Id.* (internal citation omitted).

there is a lack of records and does not extend to the District's burden to prove all complainants where employees who performed work for Dynamic Visions. *Cf. DeSisto*, 929 F.2d at 794 ("Although [employee who worked as a teacher at the Massachusetts campus of a boys farm program] could certainly testify about his own hours and duties, . . . he should not have been permitted to testify in a representative capacity for all other employees (including blue collar workers [at that campus] and those employed in Florida").).

The District also contends that the testimony of the representative group can satisfy the burden of proof for all employees because "representative employees may establish prima facie proof of a pattern and practice of FLSA violations." *Martin v. Selker Bros.*, 949 F.2d 1286, 1298 (3d Cir. 1991). We are not persuaded because the specific issue presented in this case is more foundational in bringing a collective wage claim action, to the extent actual employment is being challenged. It is the District's burden to prove (1) the complainants were employees of the employer, (2) who performed work for the employer, (3) were not compensated or timely compensated for their work, and (4) the measure of damages due to the employees. *See Mt. Clemens*, 328 U.S. at 687-88. The District's contention skips the requirement of establishing by a preponderance of the evidence each element of a

wage claim action, which includes proving the non-testifying complainants were employees and performed work for Dynamic Visions.

Dynamic Visions challenged the status of all complainants as employees; thus, to resolve this dispute the District needed to provide evidence proving employment in order for the trial court to find Dynamic Visions liable to all members of the group in the collective action. Here, the District's position — that the non-testifying complainants were employees because they filed OWH claims — is conclusory and unsupported by any evidence other than the complaint forms, which were not admitted for the truth of the allegations asserted within them. Furthermore, OWH's methodology for verifying employment does not provide assistance. Ms. Hood testified that to verify employment OWH would either use documentation provided by the complainant and employer, or in the absence of documentation would reach a determination based on the testimony of the complainant and employer.[12] Here, based on Ms. Hood's testimony, we have to assume that in the absence of documentation OWH's verification of employment was a credibility determination. The trial court did not defer to OWH's credibility determination.

---

[12] In addition, Ms. Hood's testimony that it was her experience OWH did not pursue complaints that it could not substantiate was her personal opinion and unsupported by data.

The trial court could also not conduct its own credibility assessment considering the absence of testimony from the non-testifying complainants.

The trial court did not err in determining that the District failed to prove that the non-testifying complainants were in fact employees. As stated by the trial court, due to the nature of the work, where "a large number of people who probably don't know each other, didn't really work together, didn't work at the same time, and don't even speak the same language in many cases," and without some evidence to verify employment, either testimony from co-workers, admissible documents, or testimony from those complainants themselves, it was proper to require evidence probative of the central issue of whether the non-testifying complainants were employees.

Finally, the District argues that the trial court applied the wrong legal standard, requiring a precise calculation of damages, and therefore erred in reducing damages to eleven of the testifying complainants. We disagree. The trial court applied the legal standard announced in *Mt. Clemens*, which states that an employee must produce "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference," which the court should utilize to calculate approximate damages. *Mt. Clemens*, 328 U.S. at 687. *Mt. Clemens* does not support the District's assertion that a court must wholly accept, without discretionary

assessment, an employee's approximated damages whenever the employer has failed to keep proper records.[13] The trial court's reduction or denial of damages to eleven of the testifying employees was not made in error because the complainants' initially claimed damages were either "disclaimed" during their testimony at trial, were found to have tabulation errors, or were found to be false or otherwise discredited. "[R]esolution of conflicting evidence is within the province of the trial court." *Johnson & Jenkins Funeral Home, Inc. v. District of Columbia*, 318 A.2d 596, 597 (D.C. 1974) (holding that the trial court did not clearly err in awarding damages to two employees who were under compensated, only after reducing the total amounts claimed upon finding some testimony untruthful). In other words, the evidence presented on behalf of these individuals was not sufficient to meet the "just and reasonable inference" afforded under *Mt. Clemens* and the damages claims were properly reduced on that basis.

In conclusion, we affirm the trial court's judgment in whole.

---

[13] The District cites to several cases in support of this argument. However, each is distinguishable from the facts in this case. *See Arias v. United States Serv. Indus.*, 80 F.3d 509, 512 (D.C. Cir. 1996) (finding "nothing unduly speculative" about inferences drawn from a created document summarizing voluminous time and payroll records); *Herman v. Hector I. Nieves Transp., Inc.*, 91 F. Supp. 2d 435, 446-47 (D.P.R. 2000) (finding that testifying truck drivers provided an adequate basis for determining the average number of hours worked constituting sufficient proof of the amount and extent of work as a matter of just and reasonable inference).

*So ordered.*